# MICHAEL JOSEPH DEMPSEY *v.* STATE OF MARYLAND

[No. 128, September Term, 1974.]

*Decided December 19, 1974.*

The cause was argued before MOYLAN, MENCHINE and DAVIDSON, JJ.

*William O. Goldstein, Assigned Public Defender*, for appellant.

*James I. Keane, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *William B. Yates, II, State's Attorney for Dorchester County*, on the brief, for appellee.

MENCHINE, J., delivered the opinion of · the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 30 *infra.*

Michael Joseph Dempsey was convicted of breaking and entering (Art. 27, § 32, Annotated Code of Maryland, 1971 Repl. Vol.) and Grand Larceny by a jury in the Circuit Court for Dorchester County. He was sentenced to concurrent ten year terms. His appeal asks:

"1. Did the instruction to the jury subsequent to the preliminary hearing on the Motion to Suppress the confession deny a fair and impartial trial within the constitutional framework of the Fourteenth and Fifth Amendments of the Constitution of the United States?

2. Was there sufficient evidence to convict the Defendant of breaking and entering and grand larceny? "

### *Fair Trial*

When it appeared to the trial judge that the State would offer and that appellant would contest admissibility of an alleged confession, a hearing was conducted out of the presence of the jury to determine the preliminary issue in accordance with procedures recommended in *Smith v. State,* 189 Md. 596, 606, 56 A. 2d 818, 822-23. The arresting police officer, Cpl. Wilson Majors, and Dianna Webster, a secretary employed by the Cambridge Police Department, testified at the hearing at the instance of the State. The defendant and his wife also testified. The trial judge found that the proffered confession "was voluntarily made after proper warning."

When the jury was brought back to the courtroom the trial judge addressed them as follows:

"Mr. Thomas and ladies and gentlemen, while you were not in the courtroom the Court heard testimony relating to the voluntary nature of a statement allegedly made by the defendant. You will hear the same testimony that the Court heard. The Court has found by a preponderance of the evidence that the statement was voluntarily made after proper warnings and that it was a voluntary statement in every regard. Now the same evidence will be given to you, and you will have the ultimate determination of deciding whether the statement was voluntary and whether it should be believed, and, of course, you make that determination beyond a reasonable doubt. If you find that it was voluntary, that it should be believed, then you give it the weight that you think it deserves, as you do any other evidence."

There was no objection; no motion to strike; and no request for a clarifying or advisory instruction. It is plain,

accordingly, that the contention now made was not raised and decided in the trial court and ordinarily would not be considered on appeal. Rule 1085. See: *Robinson v. State*, 249 Md. 200, 216, 238 A. 2d 875, 884-85. Appellant maintains, however, that the remarks of the trial judge were so prejudicial to the rights of the accused as to deny him a fair and impartial trial and that we should take cognizance of the matter as plain error, citing *Barnhart v. State*, 5 Md. App. 222, 246 A. 2d 280.

We observe that the course followed by the trial judge did not follow recommendations made in prior decisions of the Court of Appeals and this Court. In *Linkins v. State*, 202 Md. 212, 96 A. 2d 246, the Court of Appeals declared at 221-22 [250-51]:

> "*Admissibility does not signify that the evidence admitted has demonstrated or proved the fact to be proved, but merely that it is received by the tribunal for the purpose of being weighed with other evidence. Admissibility falls short of proof. The rule of law uttered by the judge, merely declares what is sufficient to go to the jury.* The jury ultimately decides upon the total effect which we call proof." (Italics supplied.)

In *Barnhart v. State, supra,* we said at 229 [285]:

> "* * * the court should have made clear to the jury that *its rulings merely declared that evidence produced before the court was sufficient to have the confession go to the jury;* that the admission of the confession did not signify that it was thereby demonstrated or proved to be freely and voluntarily made beyond a reasonable doubt, admissibility falling short of such proof as being based only on *prima facie* proof; and that the ultimate determination of the jury as to voluntariness was to be only on evidence and rational inferences therefrom before them." (Italics supplied.)

We shall again urge trial courts conducting pre-

liminary hearings upon the admissibility of a confession in jury trials to adopt the following procedure at its conclusion: (a) if the trial court concludes during a preliminary hearing that a statement of the accused was involuntary, its decision should be placed upon the record out of the presence of the jury with no reference to such statement being made in their presence; (b) if the trial court concludes from all of the evidence that the State has shown by a preponderance of the evidence that it was voluntary, its decision also should be placed upon the record out of the presence of the jury without comment in their presence beyond the overruling of objection to its admission. The court may, if it feels that some comment to the jury is necessary or desirable to explain their temporary exclusion from the proceedings, inform them that the hearing was necessary to enable the court to determine whether certain disputed evidence was admissible in the proceedings before the jury. The trial court, however, should avoid any comment to the jury that a determination had been made that such statement meets constitutional standards, or that it was freely and voluntarily given. Such a determination is an issue directed to the jury alone.

This is not to say that the remarks of the trial court in the subject case justify reversal. It was a necessary preliminary duty of the trial court to make a determination as to the admissibility of the statement of the accused. The Court of Appeals of Maryland in *Smith v. State, supra,* said at 603-04 [821-22]:

"* * * Before a confession can be admitted in evidence, the State must show, to the satisfaction of the court, that it was the free and voluntary act of an accused; that no force or coercion was exercised by the officers obtaining the confession, to cause the accused to confess; that no hope or promise was held out to an accused for the purpose of inducing him to confess. If, after a consideration of both the evidence of the State and the evidence offered by an accused (if any be offered by him) regarding the matter, the court is of the opinion

that the evidence shows, *prima facie,* that the confession was freely and voluntarily made, it should be admitted in evidence; and, if not, it should be rejected."

This Court in *Mulligan v. State,* 18 Md. App. 588, 308 A. 2d 418, said at 600-01 [425]:

" 'Preponderance' [of evidence] is defined in Black's Law Dictionary 1344 (rev. 4th ed. 1968) to mean the '[g]reater weight of evidence, or evidence which is more credible and convincing to the mind.'

"In *Smith v. State, supra,* and other Maryland decisions, the term *prima facie* is used. That type of evidence has been defined to mean, ' . . . good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient.' Black's Law Dictionary, *supra,* at 1353-1354.

"A perusal of *Smith v. State, supra,* and the other Maryland decisions to which we have referred in n. 8, *supra,* leads us to the inescapable conclusion that while Maryland has articulated that the evidence must be *prima facie,* it has, nevertheless, continuously been applying the preponderance of the evidence standard that a confession be freely and voluntarily made before it is admissible." (Footnote omitted.)

In the subject case although the trial judge pointed out to the jury that he had determined that the statement met this test of admissibility, he was careful to point out to the jury that it was that body's function to determine whether the statement had been freely and voluntarily made after *Miranda* warnings, and that decision upon that issue must be justified by proof satisfactory to them beyond a reasonable doubt.

14

Appellant places his chief reliance upon *Barnhart, supra.* We regard that case, however, as readily distinguishable. It is true that upon our own motion we did reverse in *Barnhart, supra,* although no objection had been made to the comments of the trial judge in that case. We believe, however, that the subject case is controlled by our decision in *McCarson v. State,* 8 Md. App. 20, 257 A. 2d 471. *McCarson* distinguished *Barnhart, supra,* in language equally pertinent here, saying at 22-23 [473]:

"The appellant also contends that the court erred in announcing its preliminary decision in the presence of the jury, in that by so doing it usurped a function of the jury. At the close of the evidence received out of the presence of the jury, the judge announced his decision in the jury's presence. The transcript reads:

'(The jury returned to the jury box, and the following transpired in the presence of the jury:)

THE COURT: I will rule the statement is voluntary and admissible. Of course, you have your exception.

MR. WILSON (defense counsel): Yes, sir.'

In the circumstances, considering the appellant's failure to contradict or refute the evidence that the confession was voluntary, to object to its admission and to request instructions on the issue, we see no prejudicial error requiring reversal. *The instant case is readily distinguishable on the facts from Barnhart v. State, 5 Md. App. 222, where the judge, after hearing evidence without the jury, indicated to the jury that he had found the confession voluntary beyond a reasonable doubt, and told the jury in admitting the confession after the evidence was received in their presence that it was his opinion that the testimony showed 'conclusively that it was freely and voluntarily given.'* " (Italics supplied.)

Our constitutionally mandated independent, reflective appraisal of the entire record in the subject case persuades us that there was no credible evidence refuting or contradicting testimony that *Miranda* warnings had been given and that the statement of the accused was freely and voluntarily given.

The evidence upon the issue in substance was as follows:

Corporal Majors, a criminal investigator of the Cambridge City Police Department, testified that on Saturday, November 10, 1973, he had been assigned to investigate a breaking and entering of the Lantern Inn on Race Street, in Cambridge, Maryland. In the course of that investigation, the accused came under suspicion.

On Monday, November 12, 1973, following information gained over the weekend, Majors went to a room in the Cambridge Hotel occupied by the appellant and his fiancee — later his wife. He said that both subjects had been drinking, and there were a number of empty beer cans (all Pabst brand)[1] in the room. He said that the appellant walked with him to the Cambridge Police Station, arriving after 1 p.m., where appellant executed a written waiver in the following form:

### "STATEMENT OF MIRANDA RIGHTS

1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.
5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

---

1. Four cases of Pabst beer were included in the property taken from the Lantern Inn during the break-in.

WAIVER OF RIGHTS

I have read the above statement of my rights and I understand each of those rights, and having these rights in mind I waive them and willingly make a statement."

Majors testified that a written statement thereafter also was executed by appellant, reading as follows:

"STATEMENT OF: Michael Joseph Dempsey

1.) Q.   What is your full name?
   A.   Michael Joseph Dempsey.
2.) Q.   What is your address?
   A.   619 Race Street.
3.) Q.   What is your date of birth?
   A.   8-8-45
4.) Q.   How old are you?
   A.   28
5.) Q.   Mr. Dempsey, I am investigating a incident that occurred at the Lantern Inn at 529 Race Street, sometime in the early morning hours of 11-10-73. Would you tell me in your own words, what you know about this incident?
   A.   I broke into the back door, went in and took $60.00 out of the cigarette machine, a case of beer which I left on the side. Then I left after receiving the money and the case of beer. That's all, I broke in there.
6.) Q.   The investigation revealed that there was a green colored piggy bank that was taken from the scene, containing an unknown quantity of coins. Did you also take this?
   A.   Yes
7.) Q.   How much was in it?
   A.   176 pennies

8.) Q. Is there anything else you would like to tell me about this incident?

A. No, except that I had just left Baltimore County Jail Friday afternoon. I went to the welfare office and they wouldn't give me nothing and I was broke and didn't have anything or anyone to give me anything. I went the other way and stole to eat and sleep.

/s/ MICHAEL J. DEMPSEY

Witness: /s/ Wilson H. Majors

Wilson H. Majors
Detective Corporal"

He testified that no force or coercion; no offer of hope or reward; no indication that appellant would be better off or that a judge would be more lenient was directed to the appellant to induce the confession. He said the confession was appellant's voluntary statement, freely given. He acknowledged that appellant had been drinking but said that Dempsey was not intoxicated. He said that the statement had been made orally in the presence of himself and Dianna Webster and that it had thereafter been typed, executed and witnessed. He said that Dianna Webster had been present also when the *Miranda* waiver was executed.

Mrs. Dianna Webster testified that following her return from luncheon on November 12, 1973 at about 1 p.m., she saw the appellant with Corporal Majors and "was asked if I would take a statement." The following quotations give the warp and woof of her testimony:

"Q Did he seem to understand each and every question that was asked him?

A Yes, sir, he did.

Q Did he answer the questions?

A Yes, sir.

Q Did he seem to know what he was doing?

A  Yes, he did.

Q  Did the officer hold out any reward to him for making the statement?

A  No, sir, he did not.

Q  Did he threaten to harm him in anyway or use physical violence to his person unless he gave him the statement?

A  No, sir.

Q  Did the officer offer him any money, offer him anything for his statement?

A  No, sir, he did not.

Q  He did not?

A  No.

Q  Did he use any coercion or duress on him to get his statement, any subtle type of duress?

A  No, sir.

Q  Did he tell him he would be immuned from prosecution or anything of that nature?

A  No, sir, he did not. Only one thing I would like to add, at the end of the statement I do recall Mr. Dempsey saying as he was signing the statement, he said, he looked up at Detective Majors and said, 'You know, I'm signing my life away', that was all.

\* \* \*

"Q  You saw him put his signature on here, on that waiver?

A  Yes, sir.

\* \* \*

Q  Do you think that his condition was such that he could give intelligent answers in a voluntary way?

A  Yes, I do.

Q  I see. How long were you with him?

A  How long was I with him?

Q Yes.

A Well, I guess it was about fifteen or twenty minutes, then I left the office and went in my office and typed.

Q Did you see him stand-up during that time at all?

A I recall, I asked him to move over closer to my desk so I could hear what he was saying, but that was all.

Q Did he move closer to your desk?

A Yes, he did.

Q Did he seem to respond to all the questions?

A Yes, sir.

Q You think he had been drinking, but he wasn't —

A He may, I don't know, I'm not saying. There was no reason for me to believe he was drinking, but I'm not saying that he had not had a drink or two, because he may have. * * *

* * *

Now let me ask you this, how did you take this statement down?

A How did I write it down?

Q Yes.

A Shorthand.

Q I see. When did you transcribe it?

A When did I transcribe it? After we completed the statement I went back to my office, and from my notes I typed it on the form, white form, just a white sheet of paper in question and answer form.

Q The same day?

A Yes, right after.

Q When was it presented to Mr. Dempsey?

A I proceeded back to Detective Major's office after the statement was finished being typed. Mr.

Dempsey then read over the statement and signed it and said, 'You realize I'm signing my life away.'

Q That is when he said that. You saw him sign it?

A Yes, I did."

At no time did the appellant directly contradict any of the testimony of the police or the secretary. His testimony before the trial court was limited to an implied assertion that he was by reason of intoxication without conscious recollection of having made the statements attributed to him or having executed the two documents. This is quite graphically shown by the following excerpts from his testimony:

"Q All right. When you got in his office who was there?

A Corporal Majors.

Q All right. Did he address you with these warnings, warning you about talking to him?

A Not that I recall.

\* \* \*

\* \* \* Did he mention anything to you about what he wanted to question you about?

A Yes, sir, he found some change in my room.

Q We know that. I am talking about at police headquarters.

A I don't remember.

Q You don't remember him saying anything to you about you having a right to remain silent?

A No, sir.

Q The Miranda rights. Do you know what they are?

A Yes, sir.

Q You're saying you don't remember whether he gave them to you or not at that time?

A I'm just not sure.

Q On this waiver of rights, I'll show you this paper, 'I have read the above statement of my rights. I understand each of those rights, and having these rights in mind, I waive them and am willing to make a statement.' This is signed Michael J. Dempsey.

A J. Dempsey.

Q Is that your signature?

A Doesn't look like my signature. I don't write like that.

Q Well, you say this isn't your signature, it doesn't look like it. Did you sign anything at —

A I don't remember whether I signed anything or not.

Q You don't know whether you signed it or not?

A No, sir.

Q How long were you there, do you know that?

A No, sir.

Q Do you know where you went after he talked to you?

A Yes, sir, I went back to the hotel.

Q Who let you go back?

A He did.

Q Did he go with you?

A No, sir.

Q All right. Now, let me ask you this, who else was there with Officer Majors at any time during the time you were at police headquarters?

A Well, there was a young lady that came in, after he had went out and said, 'Let me get the secretary', or something.

* * *

Q How long were you talking with him before he asked the girl to come in?

A I don't know.

* * *

Q Did you do any talking while she was there with Officer Majors?

A Yes, sir, she was writing something.

Q You don't know what it was?

A No, sir.

Q You don't know what he told her — what you told her?

A No, sir.

Q Again, you deny — you don't know whether that is your signature or not.

A I'm not going to deny it, but it certainly does not look like my signature.

Q Well, did you hear them say anything about having an attorney?

A No, sir.

Q When you were talking to him at police headquarters?

A No, sir."

The lack of recall of the appellant concerning the waiver and statement was in marked contrast to his recollection of the immediately preceding events. The following excerpts from his testimony will serve to illustrate the point:

"Q * * * What happened at twelve o'clock?

A Mr. Majors came to the door, knocked on the door. I asked him — he asked if he could come in, and I said, 'Yes, sir.' He asked me what did I do on Friday night, and I told him that I did nothing, except that I was at the bar drinking and so forth.

Q Did he tell you why he wanted you there to headquarters?

A He told me that before I left the hotel.

Q All right. So what did he tell you?

A He told me he was — he said he had a breaking and entering and grand larceny that he was

checking out, and wanted to know of my whereabouts on Friday night.

Q Then what did you tell him, or he tell you?

A He told me he was taking me down to headquarters and talking to me there. It seems as though he didn't want to talk to me in front of my wife, so he assured her before I left that I would be back within the hour.

Q So you went down there with him?

A Then we went down there.

Q We are talking about this particular afternoon from the hotel here. Which way did you go to headquarters, do you recall?

A We made a left and went downstairs.

Q Yes, but once you got out of the —

A We walked and made a left and walked thru the alley.

Q Thru an alley to headquarters?

A Yes.

* * *

"Q You remember the officer coming to your hotel room, right?

A Yes, sir.

Q You remember asking him in?

A Yes, sir.

Q And you remember talking to him?

A Yes, sir.

Q You remember giving him consent to search your room?

A Yes, sir.

Q And you remember that he did search your room?

A No, sir, he didn't search my room.

Q Where did he find this? (indicating)

A He found it beside my wife's pocketbook. He

didn't search, he come right in, went over there and picked it up.

Q It was right there in the open?

A Yes, sir, it wasn't hid.

Q It wasn't hid?

A No, sir.

Q How many rolls was it, do you know?

A It was nine rolls.

Q Nine rolls. Now, you remember that he took those nine rolls of money?

A He picked the money up.

Q You remember that. So you remember it was twelve o'clock on that day, it wasn't any other hour; so he took you into the station, is that right?

A Took me into the police station, yes, sir.

Q Did you walk on your own?

"A Uh-huh.

Q Nobody dragged you in there or anything, did they?

A No, sir.

Q And you say you sat down, you remember the young — you said you remember he said that a young lady was coming in, he went out to get the secretary, you remember that, you testified to that.

A Yes.

Q And you remember there were two desks in there, you sat in one and she sat in the other.

A No, she did not sit in the other.

Q Where did she sit?

A Just like I said, there were two chairs like that, one desk, I sat at one and she sat at the other.

Q There was two chairs and one desk?

A Yes, sir."

Mrs. Dempsey testified that she was with the appellant in

his hotel room from Saturday at 1 p.m. until Officer Majors came to the room on Monday around noon. She said he was drinking heavily and had gone out four or five different times to get six packs of beer. As to appellant's sobriety she said, "his eyes were bloodshot, he wasn't staggering but he was intoxicated. * * * He had been drinking ever since Friday afternoon without stopping * * *." She was then asked:

"Q You were with him Saturday until the time Officer Majors came?

A Yes, sir.

Q Well, do you feel that when Officer Majors was talking to him in the apartment that your husband knew what he was talking about when he answered him or talked to him?

A I think he was more or less, 'Just don't give a darn', you know, because when he went down to the police station with Officer Majors he took a beer and put it in his pocket and took it right to the police station with him.

Q You saw him walk out of there with the can of beer?

A Yes, sir.

Q Where did he have it when he walked out?

A He stuck it in his pocket.

Q I see. Was it open or not?

A No, it was closed.

Q So you felt that he was intoxicated?

A Yes, sir, I know he was."

In *Robinson v. State, supra,* the trial judge told the jury that he would rule "that in the Court's opinion, the evidence established is that any statement taken from this defendant was a voluntary one of his own free will." Id. at 215 [884]. The Court in *Robinson* said at 216-17 [884-85]:

"It will be observed that appellant did not object to the reading of the court's remark to the jury,

that he did not move to strike it nor did he ask that the jury be instructed to disregard it; moreover, one should bear in mind, at no time thereafter did he make any objection, file any motion to strike or submit any request for an instruction to disregard the statement. There was no request that the court cover the matter in his charge to the jury. The court did not mention it in his charge and appellant did not except to his failure to do so. It was neither mentioned nor referred to in any succeeding motion, including the motion for a new trial. It was neither mentioned nor referred to in the arguments of counsel at the trial nor in the arguments at the hearing on the motion for a new trial. The question appears to have been raised in this Court for the first time. We think, therefore, that the propriety of communicating the court's expression of opinion to the jury is not reviewable on this appeal. Maryland Rule 756, *Bennett v. State*, 230 Md. 562, 568, 188 A. 2d 142 (1963).

"Assuming for the sake of argument, however, that the question is reviewable and assuming further that there was some impropriety in allowing the jury to learn how the court felt about it, we are not persuaded that appellant was prejudiced thereby. A quite recent statement of the general rule will be found in *Davis and Peterson v. State*, 1 Md. App. 581, 232 A. 2d 535 (1967), *cert. den.* by this Court 17 November 1967:

'Prior to admitting the statements, testimony as to their voluntariness was first given before the trial judge out of the presence of the jury and subsequently repeated in the presence of the jury.

'The admissibility of a confession is, preliminarily, a matter for the trial judge. Conflicts in testimony as to how the confession was obtained are to be resolved in the first instance by the trial judge and if, after finally

and independently resolving the issue of voluntariness against the accused, the trial judge admits the confession, the matter of voluntariness is finally determined by the jury. *Jackson v. Denno,* 378 U. S. 368; *Sims v. Georgia,* 385 U. S. 538; See "Jackson v. Denno — Revisited," by Justice William A. Grimes, Vol. 6, No. 3, Trial Judges Journal; *Smith v. State,* 237 Md. 573; *Hall v. State,* 223 Md. 158, 169-170. The procedure followed in the lower court was proper and we find from the record no basis for disturbing the conclusion of the trial judge or the jury.' *Id.* at 585.

The only witness produced on behalf of the appellant was his older (32) brother. His testimony did not go beyond stating that the appellant did not complete any grades beyond the fourth and that he went to the Johns Hopkins Hospital about six times for surgery. It is immediately apparent that when Judge Dyer ruled appellant's statement to be 'a voluntary one of his own free will' the State's evidence of 'voluntariness' was uncontradicted. It is most unlikely, therefore, that the jury, on the evidence then before it, would have reached a different conclusion, even if the court's opinion had not been made known to them."

Appellant next goes on to contend that the sentence, "You will hear the same testimony relating to the voluntary nature of a statement allegedly made by the defendant" contained within the court's remarks "is unfair because it forces the defendant to testify for the purposes of the motion before the jury" with the jury "hearing of his prior record." The easy answer to this complaint is that he was not questioned about a prior record while testifying before the jury.

Not only was there no denial or contradiction of the testimony that the statement was voluntarily given after waiver of rights, there is no permissible inference from the

28

testimony of Dempsey or his wife that the confession was caused by intoxication. Under similar factual conditions (except that drugs rather than alcohol was the intoxicant), the Court of Appeals said in *Bryant v. State,* 229 Md. 531, 535-36, 185 A. 2d 190, 192:

"On cross examination and under questioning by the court this witness testified that appellant had probably taken heroin within several hours prior to the confession and was probably under its influence, but appeared normal in all respects, responding coherently to questioning, including many answers involving details as to dates and times. The appellant's counsel did elicit from the witness the fact that the appellant was probably under the influence of narcotics at the time of the confession, but this does not of itself make the confession not free and voluntary. In *People v. Waack* (Cal.), 223 P. 2d 486, the defendant was charged with unlawfully furnishing and administering narcotics to another. In rejecting the defendant's contention that his confession was not freely given due to his being under the influence of narcotics, the court said, at page 489:

'The question is not whether the defendant was suffering from the effects of a narcotic when the statements were taken, but whether such statements were freely and voluntarily given by defendant at a time when he knew and understood what he was saying.'

In that case, as in the instant case, the defendant gave detailed statements as to times and places to the police."

In *Mundell v. State,* 244 Md. 91, 223 A. 2d 184, it was said at 93 [185]:

"The test in this case is not, as the defendant claims, whether he was frightened, hysterical, depressed and had been drinking, but whether his

disclosures to the police were freely and voluntarily made at a time when he knew and understood what he was saying. See *Wiggins v. State*, 235 Md. 97, 200 A. 2d 683 (1964), *cert. den.* 379 U. S. 861 (1964). Also see *Bryant v. State*, 229 Md. 531, 185 A. 2d 190 (1962). Not only was the defendant advised of his right to remain silent and to see a lawyer and warned that any statement he made could be used against him, but the record is clear that he was rational and coherent during the time the statement was taken. In addition to this, it is apparent from the record that he made the statement freely and voluntarily and that no force, threats or promises were made to induce him to make it."

To the same effect is *Hopkins v. State*, 19 Md. App. 414, 423, 311 A. 2d 483, 488.

Careful examination of the evidence presented by appellant and his wife shows that it fails utterly to show that the statement admitted in evidence was induced or occasioned by the intoxication of the accused.

### Sufficiency of the Evidence

There was testimony that the rear door of the Lantern Inn in Cambridge, Dorchester County, Maryland had been broken on November 10, 1973, the premises had been entered and cash in the amount of $100.00, four cases of Pabst beer and other property had been taken. There was testimony also that the door had been locked at 2 a.m. on that day and that the proprietor and the appellant were the last persons to leave the premises.

This evidence, taken with the confession of the accused, was legally sufficient for conviction of the accused of the offenses charged. *Bazzell v. State*, 6 Md. App. 194, 199, 250 A. 2d 674, 677.

*Judgments affirmed.*

*Davidson, J., dissenting:*

In my view it is reversible error for a trial judge to announce in the presence of the jury his preliminary finding of voluntariness of a confession in any case in which the accused presents evidence, no matter how slight, which, if believed by a jury, would support a rational inference that the confession was involuntary. This result follows not only from the holding of this Court in *Barnhart v. State*, 5 Md. App. 222, 246 A. 2d 280 (1968), but also from the holdings of the Court of Appeals and this Court that it is prejudicial error for a trial court to comment upon the credibility of witnesses and the weight to be given to their testimony on critical issues. *Elmer v. State*, 239 Md. 1, 209 A. 2d 776 (1965); *Newton v. State*, 147 Md. 71, 127 A. 123 (1924); *Kowalewski v. Carter*, 11 Md. App. 182, 273 A. 2d 212 (1971).

The record shows that between 2:00 a.m. and 9:30 a.m. on 11 November 1973, the Lantern Inn was broken into and entered. About $100 in quarters, dimes and nickels, and an unknown quantity of cigarettes had been pilfered from a cigarette machine. Four or five cases of Pabst beer and a piggy bank containing about $35 in bills were also missing.

At about 12 noon on 13 November 1973, appellant, who had been at the tavern from 9:30 p.m. on 10 November 1973 until it closed at 2:00 a.m. on 11 November 1973, was apprehended by Corporal Wilson Majors of the Cambridge City Police Department in a hotel room in which his then fiancee, and now wife, was also present.[1] The appellant was drinking beer at the time he opened the door to admit Corporal Majors. There were a number of empty, as well as several full, Pabst beer cans in the room. A lawful search uncovered a brown paper bag containing nine rolls of nickels each of which totalled $2.00. The appellant voluntarily accompanied the police officer to police headquarters, taking with him a can of beer which he finished moments before the police began to interrogate him.

At the trial, upon objection to testimony offered by

---

1. Appellant married Lynn Holliday on 19 November 1973, nine days after the commission of the crimes herein involved.

Corporal Majors relative to the circumstances under which a confession was obtained from the appellant, a suppression hearing, out of the presence of the jury, was held. The testimony adduced by the State at that hearing is amply set forth in the majority opinion. The appellant then testified that he was 28-years-old, married, and had completed eighth grade. According to appellant, after he left the Lantern Inn at about 2:00 a.m. on Saturday, November 11, 1973, he visited two other bars where he drank until noon on Saturday. At 1:00 p.m. he met his fiancee at a hotel where they remained until he was apprehended on Monday, November 13, at about 12 noon. Between 1:00 p.m. on Saturday and the time of his apprehension on Monday he remained in his hotel room except for a few occasions on which he left to purchase food or beer. The time within the hotel room was spent in drinking, sleeping, eating and talking with his then fiancee. On Monday he awoke at about 8:00 a.m. He began to drink one beer after another. At about 9:30 a.m. he went to a nearby bar or store and picked up 12 more cans of Pabst beer. He returned to the hotel room and continued to drink until 12 noon when Corporal Majors knocked on the door.

With respect to his interrogation, the appellant testified that because he had been drinking he could not remember the critical words spoken to and by him nor the critical events which occurred during his interrogation. He could not remember whether he had been given his *Miranda* rights. He could not remember what he had said at the time his inculpatory statement allegedly was made. He could not remember signing a waiver of rights form. Whereas he did not deny that the signature on the waiver of rights form was his, he did state that he did not remember whether he had signed such a form and indicated that the signature on the form did not look like his handwriting or his signature. On cross-examination, when pressed as to why he remembered in detail many of the immaterial events surrounding his arrest and his interrogation yet was unable to remember what had been said to him during his interrogation, he reiterated that his inability to remember the words spoken

to him and the other material events that occurred during his interrogation was attributable to his drinking.

Mrs. Dempsey also testified at the suppression hearing. She generally corroborated her husband's testimony as to the events occurring between 12 noon on Saturday and 12 noon on Monday, stating that during that period she, herself, did not drink but her then fiance drank "without stopping." She stated that at the time the appellant left the hotel room with Corporal Majors, his eyes were bloodshot and that while he "wasn't staggering" he was "intoxicated."

At the conclusion of the suppression hearing the judge found that the confession was voluntarily made after proper warnings had been given. The jury was recalled. The court then advised the jury as follows:

> "THE COURT: Mr. Thomas and ladies and gentlemen, while you were not in the courtroom the Court heard testimony relating to the voluntary nature of a statement allegedly made by the defendant. You will hear the same testimony that the Court heard. *The Court has found by a preponderance of the evidence that the statement was voluntarily made after proper warnings and that it was a voluntary statement in every regard.* Now the same evidence will be given to you, and you will have the ultimate determination of deciding whether the statement was voluntary and whether it should be believed, and, of course, you make that determination beyond a reasonable doubt. If you find that it was voluntary, that it should be believed, then you give it the weight that you think it deserves, as you do any other evidence." (Emphasis added.)

Appellant neither objected, moved for a mistrial, or asked for corrective or admonishing instructions. When the trial recommenced, essentially the same testimony was presented to the jury as previously had been presented to the judge.[2]

---

2. Before the jury, appellant additionally testified that he did not recall being given or signing the written confession. Moreover, before the jury, the

Over objection, the written waiver of *Miranda* rights and the written confession were admitted into evidence.[3] In the written confession appellant stated that he had broken into the tavern and taken $60 from the cigarette machine, a case of beer and a piggy bank containing 176 pennies.

Upon introduction of this confession, the State rested. The appellant, having challenged unsuccessfully the admissibility of the confession, presented no further evidence in his defense. After a motion for acquittal was denied, counsel were advised of the substance of the advisory instructions to be given, closing arguments were made, and the court then instructed the jury, in relevant part, as follows:

"THE COURT: Mr. Thomas, and ladies and gentlemen, again, I advise you that what I say with respect to the law is advisory only, because you ladies and gentlemen are the judges of both the law and the fact, you are the sole judges of the credibility of the witnesses you have heard and the weight to give their testimony.

As I have advised you in many other cases, the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt and to a moral certainty. That presumption attends him throughout the trial until overcome by proof of each element of the offenses charged beyond a reasonable doubt.

While the State has the obligation to prove each element beyond a reasonable doubt and to a moral certainty, that does not mean that the State is required to prove its case to a mathematical certainty or beyond any doubt whatsoever. It

wife's credibility was attacked by eliciting evidence as to a series of convictions including: disorderly conduct on several occasions; false pretenses; and tampering with a motor vehicle.

3. The appellant does not here contend that the trial judge erred in admitting the confession into evidence. His contention is limited solely to the assertion that the judge's comments relative to the voluntariness of the confession were prejudicial and constituted reversible error.

means such evidence as would convince you to act in a matter of importance in your own life. Evidence is sufficient to overcome the reasonable doubt in a criminal case if you would act upon that evidence without hesitation in your own affairs."

No exceptions to these instructions were taken. Shortly thereafter, the jury found the appellant guilty of breaking and entering and grand larceny.

In Maryland in a criminal case tried before a jury, the question of whether a challenged confession is admissible in evidence is solely for the trial judge.[4] To make that determination he first hears evidence out of the presence of the jury on the question of voluntariness. Because the preliminary decision by the court involves a mixed question of law and fact, the court need not find, beyond a reasonable doubt, that the confession was voluntary. Rather, the only duty of the trial court at this point is to decide whether the preponderance of the evidence establishes that the confession was freely and voluntarily made and therefore is admissible. *Lego v. Twomey*, 404 U. S. 477, 489, 92 S. Ct. 619, 626-27 (1972); *Mulligan v. State*, 18 Md. App. 588, 601-02, 308 A. 2d 418, 425-26 (1973). It is incumbent, however, upon an appellate court to review the entire record and to make an independent determination that the confession was voluntary and properly admitted. *Smith v. State*, 20 Md. App. 577, 585-86, 318 A. 2d 568, 574-75 (1974); *Walker v. State*, 12 Md. App. 684, 693-95, 280 A. 2d 260, 264-66 (1971).

If the trial judge determines by a preponderance of the evidence that the confession was voluntarily given and, therefore, decides to admit it into evidence, the same evidence is thereafter presented to the jury, which has the final determination, *irrespective of the court's preliminary decision*, as to whether the confession is voluntary and if so, whether it should be believed.[5] Because the ultimate

---

4. The general procedures regarding the admissibility of a confession have been set forth in Gill v. State, 265 Md. 350, 357-58, 289 A. 2d 575, 579 (1972); White v. State, 13 Md. App. 1, 5-6, 280 A. 2d 283, 286, *cert. denied*, 263 Md. 723 (1971); Barnhart, *supra*, at 5 Md. App. 223-27, 246 A. 2d 282-84.

5. Maryland is one of several states that follows the "Massachusetts" or

determination by the trier of facts is solely a question of fact, the State must prove and the jury must find that the confession is voluntary beyond a reasonable doubt. The validity of this ultimate determination of voluntariness is reviewed on appeal by applying the tests as to the sufficiency of the evidence.

The judicial determination of voluntariness must be made prior to the admission of the confession to the jury and that finding must appear from the record with unmistakable clarity. *Lynch v. State*, 9 Md. App. 441, 443, 265 A. 2d 283, 285 (1970), *cert. denied*, 260 Md. 721 (1971); *Murphy v. State*, 8 Md. App. 430, 437, 260 A. 2d 357, 361 (1970). If the trial judge decides that the statement is involuntary, his finding should be announced outside the presence of the jury, thus, precluding the State from utilizing the statement with respect to which the jury has no function. *McCarson v. State*, 8 Md. App. 20, 23-24, 257 A. 2d 471, 473 (1969). It is also preferable, as the majority opinion reiterates, that a preliminary finding of voluntariness not be announced in the presence of the jury. *Murphy, supra*, 8 Md. App. at 437 n. 5, 260 A. 2d at 361 n. 5; *McCarson, supra*, 8 Md. App. at 24, 257 A. 2d at 437.[6] The question of whether the revelation to the jury of a preliminary finding of voluntariness constitutes reversible error depends upon whether under the facts and circumstances of each individual case the defendant was prejudiced. *See Robinson v. State*, 249 Md.

---

"humane" rule, that the jury has the final determination as to whether the confession is voluntary and, if so, the weight to be accorded it. Other states follow the "orthodox" view that the question of the voluntariness of a confession is solely for the judge; that the decision of the trial judge with respect to voluntariness is final and binding upon the jury; and that the jury may consider voluntariness only as it affects the weight or credibility of the confession. *See* Jackson v. Denno, 378 U. S. 368, 410, 84 S. Ct. 1774, 1798 (1964) (Black, J., dissenting and concurring opinion, app. A).

6. Other courts and commentators agree. *See* United States v. Fayette, 388 F. 2d 728, 736 (2d Cir. 1968); Clifton v. United States, 371 F. 2d 354, 360 (D.C. Cir. 1966), *cert. denied*, 386 U. S. 995 (1967); United States v. Inman, 352 F. 2d 954, 956 (4th Cir. 1966); Kagebein v. State, 496 S.W.2d 435, 441 (1973); State v. Ford, 266 A. 2d 599, 600 (N. J. 1970); Duguay v. State, 240 A. 2d 738, 740 (Me. 1968); State v. Seal, 160 N.W.2d 643, 647 (S. D. 1968); State v. Yough, 231 A. 2d 598, 604 (N. J. 1967); State v. Broxton, 230 A. 2d 489, 494 (N. J. 1967); State v. Wolf, 207 A. 2d 670, 680 (N. J. 1965); State v. Loray, 195 A. 2d 289, 292 (N. J. 1963); 3 Wigmore, *Evidence* § 861 a n. 35 (Chadbourn Rev. 1970); 23 C.J.S. *Criminal Law* § 838, p. 271-72 (1961).

200, 238 A. 2d 875 (1968); *McCarson, supra; Barnhart, supra.*[7]

As noted in the majority opinion, the Court of Appeals and this Court previously have considered the question of the propriety of a judicial announcement to the jury of a preliminary finding that a confession was voluntary. In *Barnhart, supra,* a challenged confession was the only evidence presented to corroborate the testimony of an accomplice and therefore was vital to the establishment of guilt. Testimony as to the voluntariness of the confession, offered by the State and the appellant, was properly taken out of the presence of the jury. At the suppression hearing *slight evidence* was presented by the accused to show that the statement was involuntary.[8] The court ruled that the confession was admissible. When the jury was recalled the court advised the jury, among other things, that he had ruled that the evidence was sufficient to make the confession admissible. He informed the jury that the evidence would be repeated in their presence and that they would make the final decision as to whether the statement was voluntary. After the evidence as to the voluntariness of the confession

7. In his dissenting and concurring opinion in Jackson v. Denno, *supra,* Justice Black espoused the view that it is constitutionally impermissible for a trial judge to tell the jury that he, himself, decided that the confession is voluntary. 378 U. S. at 404, 88 S. Ct. at 1795. We have found only one court that has expressly adopted that view. United States *ex rel.* Pierce v. Pinto, 259 F. Supp. 729, 732 (D. N. J. 1966), *aff'd,* 374 F. 2d 472 (1967), *rev'd on other grounds sub nom.* Pinto v. Pierce, 389 U. S. 31, 88 S. Ct. 192 (1967). The courts of North Carolina appear to reach the same result although they do not refer to a constitutional prohibition. State v. Barber, 151 S.E.2d 51, 54-55 (N. C. 1966); State v. Walker, 145 S.E.2d 833, 836-37 (N. C. 1966).

Other courts which have considered the question of whether the announcement to the jury of the judge's preliminary finding of voluntariness constitutes reversible error have agreed with the Maryland courts. Fayette, *supra,* 388 F. 2d at 735-36; United States v. Feaster, 341 F. Supp. 524, 529 (S.D.Ala. 1972); Cantrell v. Maxwell, 298 F. Supp. 1061, 1064 (S.D.Ohio 1969); Noe v. Commonwealth, 153 S.E.2d 248, 250 (Va. 1967); State v. Mack, 207 A. 2d 567, 569 (N. J. 1965); State v. Walker, 166 A. 2d 567, 574 (N. J. 1960); State v. Smith, 161 A. 2d 520, 545-46 (N. J. 1960).

8. According to the trial judge in *Barnhart* the accused ". . . said something about having Mr. Hovermale (his attorney) present." The judge indicated that from the evidence he had heard he did not know exactly what the accused's position was as to why his statement was involuntary. He interpreted the contention to be that the accused was not advised of his right to have an attorney present and/or was not provided an attorney as he had requested.

was presented to the jury, the State offered the confession into evidence. In overruling an objection to its admission the court advised the jury, among other things, that it was his opinion "that the testimony shows conclusively that it was freely and voluntarily given" but that the jury could ignore his view since they were the ones ultimately to pass on the question. At the conclusion of all of the evidence the court proceeded to instruct the jury. The judge first pointed out to the jury that the confession was necessary to establish guilt and toward the end of his instructions reiterated that he had ruled that the confession was freely and voluntarily given, but that the ultimate decision was for the jury to make.

Notwithstanding the absence of an objection to either the comments or instructions, or a request for admonishing or corrective instructions or for a mistrial, this Court, pursuant to Maryland Rule 756 g, took cognizance of the matter. In determining that the instructions in light of the comments constituted reversible error, the court said at 5 Md. App. 229, 246 A. 2d 285:

> "We do not think that the instructions of the lower court were adequate in the light of its remarks to the jury upon finding that the confession was admissible and in overruling the objection to its admission. We feel that the jury could have concluded therefrom that the court had found beyond a reasonable doubt that the confession had been freely and voluntarily made. But this was for the determination of the jury, not the court. The court did tell the jury that they had the ultimate decision as to whether the confession was freely and voluntarily made beyond a reasonable doubt. In the circumstances, however, the court should have made clear to the jury that its rulings merely declared that evidence produced before the court was sufficient to have the confession go to the jury; that the admission of the confession did not signify that it was thereby demonstrated or proved to be freely and voluntarily made beyond a reasonable doubt, admissibility falling short of such proof as

38

being based only on *prima facie* proof; [8a] and that the ultimate determination of the jury as to voluntariness was to be only on evidence and rational inferences therefrom before them. We believe that the comments to the jury were in substance erroneous and that the instructions did not sufficiently clarify the matter. We think that the jury was apt to have been unduly influenced thereby in its deliberations to the extent of depriving the appellant of a fair and impartial trial. Therefore the judgment must be reversed and a new trial granted."

In *Robinson, supra,* the contention that a trial court committed reversible error in announcing its preliminary decision as to voluntariness in the presence of the jury was also raised. There, the sole witness produced by appellant was his older brother, who testified only that appellant had not completed any grade beyond the fourth grade and had gone to Johns Hopkins Hospital six times for surgery. At the conclusion of the suppression hearing, properly held outside the presence of the jury, the trial court found that "the evidence established is that any statement taken from this defendant was a voluntary one of his own free will." When the jury was recalled the trial court's statement was read to them by the court reporter. The appellant neither objected to the court's remark nor moved for admonishing or corrective instructions.

The Court of Appeals deemed the State's evidence on the issue of voluntariness to be uncontradicted and held that under such circumstances the propriety of the trial court's remark was not reviewable on appeal. The court further indicated that in any event the trial court had not committed reversible error because the appellant was not prejudiced. In reaching that conclusion the court said at 249 Md. 217, 238 A. 2d 885:

---

8a. The expression *"prima facie"* proof as utilized in this context has been held to be the equivalent of the expression proof "by a preponderance of the evidence." Mulligan, *supra.*

"It is immediately apparent that when Judge Dyer ruled appellant's statement to be 'a voluntary one of his own free will' *the State's evidence of 'voluntariness' was uncontradicted.* It is most unlikely, therefore, that the jury, on the evidence then before it, would have reached a different conclusion, even if the court's opinion had not been made known to them." (Emphasis added.)

In *McCarson, supra,* the same contention was made. There appellant produced *no evidence* on the issue of voluntariness and did not contradict or refute the evidence thereon adduced by the State, either before the court, with respect to the preliminary decision to be made by the judge, or before the jury, with respect to its final determination. Appellant neither challenged the admission of the confession nor objected to the trial court's comment. Moreover, he made no request for instructions on the issue of voluntariness and none were given. At the close of the evidence received out of the presence of the jury the judge announced in the jury's presence that "I will rule the statement is voluntary and admissible." In holding that the trial court had not committed reversible error this Court said at 8 Md. App. 23, 257 A. 2d 473:

"In the circumstances, *considering the appellant's failure to contradict or refute the evidence that the confession was voluntary,* to object to its admission and to request instructions on the issue, *we see no prejudicial error requiring reversal.* The instant case is readily distinguishable on the facts from *Barnhart v. State,* 5 Md. App. 222, where the judge, after hearing evidence without the jury, indicated to the jury that he had found the confession voluntary beyond a reasonable doubt, and told the jury in admitting the confession after the evidence was received in their presence that it was his opinion that the testimony showed 'conclusively that it was freely and voluntarily given.' We note that no objection was made to the action of the trial

court in announcing its preliminary decision in the presence of the jury or to the use of the word 'voluntary.' Thus the point now raised, not having been tried and decided below, may be deemed to be not properly before us. Md. Rule 1085.

We think it advisable to point out that if the decision of the trial judge is that a statement was involuntary, his finding should be announced out of the presence of the jury. This decision precludes the State from using the statement; it may not be submitted to the jury and the jury has no function with regard to it. And we think it preferable, as a general rule, if the decision of the trial judge is that the statement is voluntary, that he announce this finding out of the presence of the jury. When the statement is offered by the State in the presence of the jury, the judge can then simply rule on objection made." (Emphasis added.)

Thus, in *Robinson* and *McCarson* it was held that where an accused *does not present evidence* at either the suppression hearing or the trial to show that his confession is involuntary, an announcement by the judge to the jury that he finds the confession to be voluntary is not prejudicial. In *Barnhart* this Court held that where an accused *has presented evidence, no matter how slight*, at both the suppression hearing and the trial, to show that his confession is involuntary, and has challenged the admissibility of that confession, an announcement by the judge to the jury that the testimony shows "conclusively that the confession was freely and voluntarily given" was prejudicial and required reversal, even in the absence of an objection to the comment itself or a request for admonishing or corrective instructions.

The majority finds that in the instant case there was "no credible evidence [9] refuting or contradicting testimony that

9. In my view the majority has applied the standard applicable to appellate review of a trial court's determination of voluntariness for purposes of admissibility instead of the standard applicable to appellate

*Miranda* warnings had been given and that the statement of the accused was freely and voluntarily given." Moreover, it finds that "[n]ot only was there no denial or contradiction of the testimony that the statement was voluntarily given after waiver of rights, there is no permissible inference from the testimony of Dempsey or his wife that the confession was caused by intoxication." I do not agree.

The Court of Appeals and this Court have long recognized that in determining the admissibility of a confession the crucial question is not whether a defendant was suffering some physical or mental incapacity, but whether his disclosures to the police were freely and voluntarily made at a time when he knew and understood what he was saying. *Mundell v. State*, 244 Md. 91, 93, 223 A. 2d 184, 185 (1966); *Wiggins v. State*, 235 Md. 97, 102, 200 A. 2d 683, 686, *cert. denied*, 379 U. S. 861, 85 S. Ct. 123 (1964); *Smith v. State*, 4 Md. App. 146, 151, 241 A. 2d 728, 731 (1968). Moreover, this Court has recognized that the physical and mental condition of the accused is a factor to be considered in determining whether a confession was freely and voluntarily made at a time when the accused knew and understood what he was saying. *Hopkins v. State*, 19 Md. App. 414, 423, 311 A. 2d 483, 488 (1973); *Walker, supra*, at 12 Md. App. 708, 280 A. 2d 272; *Hargis v. Walden*, 3 Md. App. 76, 80-81, 237 A. 2d 807, 810 (1968); *see Haley v. Ohio*, 332 U. S. 596, 599-601, 68 S. Ct. 302, 304 (1948); 3 Wharton's *Criminal Evidence* § 689 (13th ed. 1973). Here the record shows by uncontroverted evidence that appellant engaged in extensive drinking for three days prior to his arrest. His wife testified that at the time of his arrest, appellant was "intoxicated." There was uncontradicted evidence that appellant was drinking

review of the ultimate question of voluntariness, which is exclusively reserved for the trier of facts. While appellate courts appropriately make a "constitutionally independent, reflective appraisal of the entire record" to determine voluntariness for purposes of admissibility, they do not resolve credibility issues on the ultimate question of voluntariness reserved solely for the jury. Here there is no contention that the confession was improperly admitted. The only issue is whether there is sufficient evidence to support a rational inference that the confession was involuntary. The credibility of the witnesses on that issue is strictly a matter for the jury. The appellant is entitled to the jury's independent determination of the credibility of the witnesses on the question of voluntariness.

between the time of his arrest and immediately prior to his interrogation. Appellant himself testified that he was unable to recall either the critical words spoken or the critical events which occurred during his interrogation. In my view, the evidence which shows that appellant's mental capacity was impaired by drink to the extent that he could not recall the critical words spoken and events which occurred during his interrogation, if believed, is sufficient to support a rational inference that at the time of his confession, he did not know and understand what he was saying and, therefore, that his confession was involuntary. Thus, there was evidence refuting or contradicting testimony that the confession was freely and voluntarily given.

In support of its position the majority relies upon cases applying the general rule that evidence of an alleged mental incapacity resulting from the use of alcohol or drugs does not preclude the admission of a confession into evidence on the ground that it was involuntarily or unknowingly made. *Mundell, supra*, at 244 Md. 91, 223 A. 2d 185; *Bryant v. State*, 229 Md. 531, 536, 185 A. 2d 190, 193 (1962); *Hopkins, supra*, at 19 Md. App. 423, 311 A. 2d 488. *See also Campbell v. State*, 240 Md. 59, 63-64, 212 A. 2d 747, 750 (1965); *Hadder v. State*, 238 Md. 341, 356-57, 209 A. 2d 70, 79 (1965); *Wiggins, supra*, at 235 Md. 102, 200 A. 2d 686; *McCleary v. State*, 122 Md. 394, 402-04, 89 A. 1100, 1103-04 (1914); *Robinson v. State*, 3 Md. App. 666, 673, 240 A. 2d 638, 642 (1968); *Carrington v. State*, 1 Md. App. 353, 357, 230 A. 2d 112, 114 (1967). All of these cases concern the propriety of the trial court's preliminary determination of voluntariness, an issue which is limited to a determination by the trial court as to whether the preponderance of the evidence shows voluntariness or involuntariness. None of them contains evidence as to the extent of the mental incapacity alleged to have resulted from the use of alcohol or drugs. More importantly, none of them holds that the defense evidence presented, if believed, would not refute or contradict the State's evidence of voluntariness or was so lacking in probative value as to be insufficient to support a rational

inference of involuntariness. None of them holds that defense evidence, which shows that an accused's mental capacity was impaired to the extent that he could not recall the critical words spoken and critical events which occurred during his interrogation, if believed, would be insufficient to raise a rational inference that the confession was involuntary or to create a reasonable doubt in the minds of the jury on the question of voluntariness. In sum, these cases do not hold that the defense evidence presented failed to give rise to a permissible inference of involuntariness. They merely hold that under the particular circumstances therein, the evidence offered to support an inference of involuntariness was outweighed by the evidence presented to show voluntariness so that the trial court was correct in allowing the issue to go to the jury. The cases relied upon by the majority are inapposite.

I believe this case is controlled by *Barnhart.* Here, as in *Barnhart,* the confession was necessary to establish guilt.[10] Here the appellant presented stronger evidence of involuntariness than that presented in *Barnhart.* Here, as there, the admissibility of the confession was challenged at trial. Likewise, here no objection was made to the comments of the judge, and there was no request for a mistrial, or admonishing or corrective instructions. In *Barnhart,* the judge announced that the testimony showed "conclusively that the confession was freely and voluntarily given." The court reasoned that the jury could conclude from the use of the word "conclusively" that the trial court had found beyond a reasonable doubt that the confession had been freely and voluntarily made. The comment was therefore viewed as erroneous in substance, and subsequent instructions to the jury that they must find the confession voluntary beyond a reasonable doubt were considered inadequate to clarify the matter. The remarks were held to

10. At oral argument the State properly conceded that absent the confession the evidence was insufficient to sustain the conviction. *See* Harrington v. State, 17 Md. App. 157, 166, 300 A. 2d 405, 410 (1973); Woodward v. State, 16 Md. App. 300, 305, 295 A. 2d 789, 791-92 (1972); Craig v. State, 14 Md. App. 515, 520, 287 A. 2d 330, 333 (1972).

be prejudicial because the judge had indicated that he had determined the precise issue to be determined by the jury, and solely by the jury, namely whether the confession was voluntary beyond a reasonable doubt. Here the judge announced that he had found "by a preponderance of the evidence that the statement was voluntarily made after proper warning" and "that it was a voluntary statement in every regard." While this statement is correct in that it properly enunciates the applicable standard for a judicial determination of admissibility, it nonetheless constitutes prejudicial error because of its impact upon the jury.

Although the difference between the expression "conclusively found" and "found by a preponderance of the evidence" might well be discernible to a lawyer or a judge whose mastery of such legalistic parlance or jargon is a part of their professional expertise, I believe that a jury of laymen, totally unversed in the linguistic niceties of *Lego* and *Mulligan, supra,* may well have drawn the inference that the judge, by his finding, had determined the very issue which was reserved exclusively for them, namely whether the confession was voluntary beyond a reasonable doubt.[11] While the judge stated that he had found the statement to be voluntary "by a preponderance of the evidence" and that the jury had the ultimate decision and must find the confession to be voluntary "beyond a reasonable doubt" and, while in his concluding instructions the judge defined what is meant by a "reasonable doubt," he at no time defined the term "by a preponderance of the evidence" nor attempted to differentiate between the two standards of proof involved. It

---

11. The distinction between the capability of a trial judge, by virtue of his legal training and the state of art of his profession, and that of a lay juror, unversed in legal technicalities, to perceive, distinguish and interpret the nuances of the law was noted by the Court of Appeals in State v. Hutchinson, 260 Md. 227, 233, 271 A. 2d 641, 644 (1970). This difference has resulted in a general rule that a judge in his jury instructions should avoid the use of words which have a technical legal meaning or, if such words are necessarily used, should explain their meaning. 5 *Wharton's Criminal Law and Procedure* § 2092 (1957); 23A C.J.S. *Criminal Law* § 1300 (1961); 75 Am.Jur.2d *Trial* §§ 604, 702 (1974); *see* State v. Thompson, 170 P. 2d 153, 162 (Utah 1946); Miller v. State, 58 N.E.2d 114, 116 (Ind. 1944); *cf.* Wintrobe v. Hart, 178 Md. 289, 296, 13 A. 2d 365, 368 (1940); Leland v. Empire Engineering Co., 135 Md. 208, 217, 108 A. 570, 574 (1919).

was most assuredly not clear to the jury that the court's ruling merely declared that evidence produced before the court was sufficient to have the confession go to the jury; that the admission of the confession did not signify that it was demonstrated or proved to be freely and voluntarily made beyond a reasonable doubt, admissibility falling short of such proof; and that the ultimate determination of the jury as to voluntariness was to be only on inferences drawn from the evidence before them. Viewed in the light of its probable impact upon the jury, the judicial comment here, as in *Barnhart*, was, in my view, misleading to the jury, prejudicial to the accused and, therefore, reversible error.

Even assuming that the judge's comment was correctly interpreted by the jury, so that they fully understood that the judge had not determined the issue of voluntariness beyond a reasonable doubt, I would reach the same result. The questions of whether a confession is voluntary, and if so, the weight to be granted it, reserved exclusively for the jury, are questions of fact, entirely dependent upon the credibility accorded to the witnesses. The evils inherent in an announcement of a preliminary judicial finding as to voluntariness arise not only from the fact that the judge has informed the jury that he has already decided the precise issue before them, on the same evidence which they will hear, (*i.e.*, whether the confession was voluntarily made beyond a reasonable doubt) but also from the fact that any comment on the part of the judge indicating that he has found the confession to be voluntary reflects on the credibility of the witnesses who have testified concerning the voluntariness of the confession. Whether the judge states that he has found the confession to be voluntary; or that he has found the confession to be voluntary by a preponderance of the evidence; or that he has found that the evidence conclusively shows that the confession was voluntary; or that he has found that the confession was voluntary beyond a reasonable doubt, he has indicated to the jury, to a lesser or greater extent, that he has believed and credited the testimony of those witnesses describing the confession as voluntary and has disbelieved or discredited

the evidence presented by those who assert that it is involuntary. In so doing he inevitably influences the jury in their appraisal of the witnesses' credibility and, consequently, in their determination of the statement's voluntariness *and the weight to be accorded it.* As Justice Black stated in his dissenting and concurring opinion in *Jackson v. Denno, supra,* 378 U. S. at 404, 84 S. Ct. at 1795:

> "This Court will find it hard to say that the jury will not be greatly influenced if not actually coerced, when what the trial judge does is the same as saying, *'I* am convinced that this confession is voluntary, but, *of course,* you may decide otherwise if you like.' " (Emphasis in original.)

Indeed, it is for this very reason that Justice Black espouses the view that it is constitutionally impermissible for a trial judge to tell the jury that he, himself, has decided that the confession is voluntary.[12]

While Maryland has rejected Justice Black's view and has determined that the question of whether the announcement of a preliminary finding of voluntariness constitutes reversible error depends upon the facts and circumstances of each individual case,[13] this State has long recognized that it is undesirable for a trial court to comment upon the credibility of witnesses and the weight to be given their testimony on critical issues. The principle generally adhered to in Maryland has been expressed in different fashions at different times.

> "But if a judge makes a statement which shows his opinion of a question of fact which the jury is to pass on, it is very apt to make an impression on some, if not all, of the jurors and great care should be exercised to avoid it." *Coffin v. Brown,* 94 Md. 190, 203, 50 A. 567, 572 (1901).

> "His [the trial judge's] attitude, however, should be, as between the parties, one of strict impartiality,

---

12. *See* note 7, *supra.*
13. *See* note 7, *supra,* and accompanying text.

and he should make no remark or comment which would tend to emphasize or minimize the value, weight, or effect of evidence." *Dairy Corp. v. Brown*, 169 Md. 257, 268, 181 A. 468, 474 (1935).

"It is the policy of the law to protect the province of the jury from invasion by the court. The court must not assume the power of judging the credibility of witnesses or determining the weight of testimony in case of discrepancy." *Singleton v. Roman*, 195 Md. 241, 246, 72 A. 2d 705, 707 (1950).

" 'It is undoubtedly true that a trial judge, because of his high and authoritative position, should be exceedingly careful in any remarks made by him during the progress of a trial, either in passing upon evidence or ruling upon prayers, and should carefully refrain, either directly or indirectly, from giving expression to an opinion upon the existence or not of any fact, which should be left to the finding of the jury . . . .' " *Elmer v. State*, 239 Md. 1, 10-11, 209 A. 2d 776, 782 (1965); *see Dresbach v. State*, 228 Md. 451, 453, 180 A. 2d 299, 300 (1962); *Marino v. State*, 171 Md. 104, 110, 187 A. 858, 861 (1936); *United Railways & Electric Co. v. Carneal*, 110 Md. 211, 232-33, 72 A. 771, 775 (1909).

"The trial judge must, of course, take great care to avoid making any statement which, by its content, or the manner of its expression, or by the way it is delivered, would tend to express disbelief in the theory of the defense, or in the testimony of defense witnesses." *Tabbs v. State*, 10 Md. App. 177, 183, 268 A. 2d 598, 602, *cert. denied*, 259 Md. 736 (1970).[14]

---

14. Maryland Rule 554b.2 provides that a judge may "sum up" the evidence in a case for a jury provided he makes it clear that the jury is to determine for themselves the weight of the evidence and the credibility of the witnesses. Language in some cases indicates that a trial judge may "comment upon" or "express his opinion upon" the evidence. *See* Alston v. Forsythe, 226 Md. 121, 129, 172 A. 2d 474, 477 (1961); Rush v. Lloyd, 221 Md. 7, 10, 155 A. 2d 666, 667-68 (1959); Reindollar v. Kaiser, 195 Md. 314, 319, 73 A. 2d 493, 495 (1950); Singleton, *supra*, at 195 Md. 246-47, 72 A. 2d 707; Snyder v. Cearfoss, 190 Md. 151, 161, 57 A. 2d 786, 791 (1948).

In his dissenting opinion in *Elmer, supra,* at 239 Md. 13, 209 A. 2d 783, Judge Hammond pointed out that:

In accord with this principle the Court of Appeals and this Court have held that remarks made by a trial judge in the presence of the jury which directly reflect upon the credibility of witnesses constitute prejudicial error. In *Newton v. State*, 147 Md. 71, 127 A. 123 (1924), a trial judge remarked to an expert witness, qualified as an accountant, who testified as to profits shown by various books, "you know better than that." The Court of Appeals said at 147 Md. 87-88, 127 A. 130:

> "The remark involved in the forty-ninth exception was equivalent to a statement by the court that the witness Gillespie had testified to what he knew to be untrue, and was a direct reflection upon his credibility . . . . In as much as the traverser's case depended upon the credibility of his witnesses, it is not easy to see how anything could possibly prejudice him more than a conclusion that their testimony was not credible and it was, in our opinion, error in this ruling."

In *Elmer, supra*, the court, in the presence of the jury,

---

"Maryland has adhered generally to the much — and to me, justly — criticized rule that the trial judge should be only an umpire. For an example of that criticism, see 3 *Wigmore* (3rd. Ed. 1940), Sec. 784. [*See also* 9 Wigmore, *Evidence* § 2551a (3d. Ed. 1940).] Many courts of other jurisdictions, including those of the federal judicial system, have taken the broader approach and have held that a *nisi prius* judge may express his views on the merits of the case, including the guilt of the accused in exceptional cases (where guilt is clear), and as to the bearing and weight of the testimony, including its credibility, provided he makes it unequivocally plain to the jury that they independently and for themselves must make the ultimate determination."

While some courts, including those of the federal system, have adopted the broader approach of permitting judicial comment on the evidence, the general rule in the majority of states, as in Maryland, is that a judge should not make any remarks which reflect upon the credibility of witnesses. 75 Am. Jur. 2d *Trial* §§ 115, 671 (1974); 5 *Wharton's Criminal Law and Procedure* § 2027 (1957); 88 C.J.S. *Trial* § 50c. (1955).

Moreover, it is interesting to note that even Professor Wigmore, who criticizes the Maryland approach, has stated that a judge's preliminary finding on the question of *voluntariness of a confession should not be revealed* to the jury even in those states which, unlike Maryland, follow the "orthodox" view (*see* note 5, *supra*) that the issue of the voluntariness of a confession is solely for the judge. 3 Wigmore, *Evidence* § 861a n. 35 (Chadbourn Rev. 1970).

declared a witness to be hostile. An objection to the comment was made but there was no motion for mistrial and no request for admonishing instructions. There the Court of Appeals said at 239 Md. 10, 209 A. 2d 781-82:

"As the case developed, its outcome depended almost entirely upon the credibility which the jury would accord to the witnesses for the State, on the one hand, and the witnesses for the defense . . . on the other . . . . [T]he judge's remark clearly indicated his disbelief of the witness and unquestionably influenced the jury's appraisal of the credibility of the witness."

The court held that although the determination of the witness's hostility was correct, the announcement of that determination in the presence of the jury constituted prejudicial error requiring reversal.

In *Kowalewski v. Carter*, 11 Md. App. 182, 273 A. 2d 212 (1971), a state trooper, without qualifying as an expert, testified as to the probable point of impact in an automobile collision. The question of primary negligence depended upon whether the accident occurred while the car was entering onto a favored highway or while the car was within an intersection. The trial court told the jury that the trooper's testimony, although he was not an expert witness, was nonetheless entitled to be given some credence because of the trooper's experience and work. In holding that the instruction constituted reversible error this Court stated at 11 Md. App. 194, 273 A. 2d 218:

"The trooper was specifically singled out by the trial judge to the jury in the challenged instruction and they may well have felt, at the least, that, contrary to what they had a right to do, they were precluded from rejecting his testimony entirely. If so it would affect the jury's evaluation of the credibility of the other witnesses and the weight to be given to their testimony. We feel that the challenged instruction, standing uncorrected and

"unexplained, tended to mislead the jury and that appellant is entitled to a new trial." [15]

An analysis of this principle brings into sharp focus the underlying rationale for the seemingly disparate results reached in *Robinson* and *McCarson,* on the one hand, and *Barnhart* on the other. In the former cases the accused did not present evidence at either the suppression hearing or the trial to show that his confession was involuntary. Thus, the judge in announcing to the jury his finding that the confession was voluntary, did not disparage the credibility of any defense witness on a critical issue. Consequently, the trial judge's action was deemed to be non-prejudicial. In *Barnhart,* the accused did present some evidence to show that his confession was involuntary. Thus, the trial judge, in announcing to the jury his finding that the confession was voluntary disparaged the credibility of the defense witness with respect to the critical issue of voluntariness, and thereby affected the weight to be accorded the confession if the jury were to find the statement voluntary beyond a reasonable doubt. Consequently, the trial judge's action was held to be prejudicial.

Applying this principle to the instant case produces a clear result. Here the confession was the critical factor in the establishment of guilt.[16] The State was required to prove every element of its case beyond a reasonable doubt, including the voluntariness of the confession. The appellant was entitled to an acquittal if the evidence he produced raised a reasonable doubt as to the voluntariness of his confession. The trial court's declaration that he found the confession to be voluntary by a preponderance of the evidence and that it was voluntary in every respect clearly indicated his disbelief of the defendant's witnesses on the issue of voluntariness and unquestionably influenced the jury's appraisal of the credibility of those witnesses on that issue, as well as on the issue of the weight to be accorded to

---

**15.** *See also* Wolfe v. State, 218 Md. 449, 454-55, 146 A. 2d 856, 858-59 (1958); Singleton, *supra,* 195 Md. at 246-48, 72 A. 2d at 707.

**16.** *See* note 10, *supra.*

the confession, if found beyond a reasonable doubt to be voluntarily made. It was, of course, the function of the jury alone, as the trier of the facts, to weigh and determine those factors. I cannot see how anything could possibly prejudice the appellant more than the jury's conclusion that the testimony of his witnesses on the critical issue of voluntariness was not credible, was not to be believed, and therefore should not even be considered with respect to raising a reasonable doubt. This prejudice exists notwithstanding the facts that the judge was correct in his finding of voluntariness and admissibility; that his remarks constituted a correct statement of the standards upon which he and the jury were to predicate their findings of voluntariness; and that the jury correctly understood those comments.

Recently this Court has twice considered the propriety of a trial court's instructions with respect to the burden of proof on an alibi defense. *Clayton Earl Daniels, a/k/a Thomas Moore v. State,* 24 Md. App. 1, 329 A. 2d 712; *Jackson v. State,* 22 Md. App. 257, 263, 322 A. 2d 574, 577 (1974). In *Daniels, supra,* recognizing that an instruction placing the burden of proof upon the accused is prejudicial because it effectively erodes the only defense available to him, Chief Judge Orth said, at p. 7:

> "We have no difficulty in determining that in no event could the erroneous instruction be held to be harmless. At the moment of truth, the verdict of the jury depended upon whether they believed the two witnesses who identified Daniels as the felon or the witness who said he was in her company when the crime was committed. *See Jackson v. State, supra.* The weight to be given the evidence and the credibility of the witnesses were matters for the trier of fact. *James v. State,* 14 Md. App. 689; *Wilkins v. State,* 11 Md. App. 113. We may not usurp the function of the jury by holding that the eyewitnesses should be believed over the alibi evidence. Daniels is entitled to a new trial."

In the instant case at the moment of truth the verdict of the jury depended upon whether they believed the State's witnesses who said the confession was made at a time when the appellant understood what he was saying, or the appellant's witnesses whose testimony supported a rational inference that appellant's mental capacity was impaired by drink to the extent that he did not then understand. In my view the prejudice resulting from the trial court's usurpation of the jury's function is equally clear here.

Finally, in reaching my conclusion I am mindful of the general rule that in considering alleged error in a charge of the trial court to the jury, this Court will consider the charge as a whole and will not select, out of the context of the whole charge, individual statements which might, of themselves and out of context, contain inartful methods of expression or appear to be misleading. *State v. Foster,* 263 Md. 388, 397, 283 A. 2d 411, 415 (1971), *cert. denied,* 406 U. S. 908, 92 S. Ct. 1616 (1972); *England and Edwards v. State,* 21 Md. App. 412, 427, 320 A. 2d 66, 75 (1974). Despite the critical nature of a finding of voluntariness in this case the trial judge offered no instructions concerning the voluntariness of the confession other than the comments quoted above and a general instruction defining reasonable doubt. He not only failed to define the term "preponderance of the evidence" and to differentiate it from the term "beyond a reasonable doubt," but also failed to point out specifically that the State had the burden of proof on the issue of voluntariness, and that in order to show voluntariness the State had to prove beyond a reasonable doubt that the appellant had been apprised of his *Miranda* rights; that he had freely and knowingly waived those rights; that no threats, promises, inducements or force were used to obtain the confession; and that the confession was freely and knowingly made. *White, supra,* at 13 Md. App. 5, 280 A. 2d 286. Under these circumstances, the comments and charge when viewed as a whole, can only be construed as misleading and prejudicial. I believe that under the facts and circumstances of this case, by announcing to the jury its finding that the confession was voluntary, the trial court committed a plain and

irremediable error of commission, material to the rights of the accused, which deprived him of his right to a fair trial and which must be corrected to serve the ends of fundamental fairness and substantial justice. *Taylor v. State*, 17 Md. App. 41, 46, 299 A. 2d 841, 843-44 (1973); *Brown v. State*, 14 Md. App. 415, 420, 287 A. 2d 62, 65 (1972); *see Wolfe, supra,* at 218 Md. 455, 146 A. 2d 859. Accordingly, I believe that the judgment should be reversed and a new trial granted, notwithstanding the absence of any objection, motion for mistrial or motion for admonishing or corrective instructions. *Wolfe, supra,* at 218 Md. 455, 146 A. 2d 859; *Taylor, supra,* at 17 Md. 45, 299 A. 2d 843; *see Elmer, supra,* at 239 Md. 7-9, 209 A. 2d 780-81; Maryland Rule 756 g.[17]

---

17. Given my view, the question of the sufficiency of the evidence would not be reached.