### BERNARD LINDEN TABBS *v.* STATE OF MARYLAND

[No. 536, September Term, 1970.]

*Decided August 13, 1970.*

178

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*David Allen,* with whom was *Milton B. Allen* on the brief, for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Peter D. Ward* and *Allen N. Horwitz, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant, a Baltimore City police officer, was found guilty by a jury in the Criminal Court of Baltimore of (1) having feloniously embezzled $80.00 from the Police Commissioner of Baltimore City in violation of Maryland Code, Article 27, Section 129, and (2) misconduct in office (malfeasance or misfeasance) by reason of such embezzlement. He was sentenced to two years imprisonment on each offense, the sentences to run concurrently. On appeal, it is contended that there was no evidence legally sufficient to show that an embezzlement violative of Section 129 ever occurred. Insofar as pertinent, Section 129 provides:

> "Whosoever * * * being employed for the purpose or in the capacity of a cashier, servant, agent, officer or clerk, by any person or body corporate shall fraudulently embezzle any money * * * which * * * shall be delivered to or received, or taken into possession by him, for or in the name or on account of his master or employer, shall be deemed to have feloniously stolen the same from his master or employer, although such money * * * was not received in-

to the possession of such master or employer, otherwise than by the actual possession of his cashier, servant, agent, officer, clerk or other person so employed, * * *."

There was evidence adduced at the trial from which the trier of fact could properly find that on January 30, 1968, agents of the Federal Bureau of Narcotics and Dangerous Drugs and officers of the Baltimore City Police Department were cooperating in an investigation, as a consequence of which $1,512.00 in federal government funds were turned over to federal agent Rhodes, the serial numbers of the bills previously having been recorded; that information was then transmitted to appellant in his capacity as a police officer that a man meeting Rhodes's description would be in the Greyhound Bus Station in Baltimore at 8:00 p.m. that night and would be carrying prohibited narcotics and a large sum of money; that appellant, together with his partner Lawrence Griffin, arrested Rhodes at the station, took him to police headquarters, and undertook to count his money, during which time, though his attention was momentarily distracted, Rhodes observed appellant place his hand in the area of his left leg; that after the money was counted, appellant placed $1,432.00 in an envelope and turned it over to the desk sergeant; that the desk sergeant counted the money and gave Rhodes a receipt for $1,432.00; that Rhodes protested that $1,512.00 had been taken from him by appellant; that thereafter appellant and Griffin left police headquarters to go to their car when they were accosted by federal agents and city officers, told to keep their hands out of their pockets, and taken to the narcotics office in police headquarters; that on the way to the narcotics office appellant made repeated attempts to put his hands into his pocket; that when they arrived in the narcotics office, the unoccupied desk of Sergeant Leon Tomlin had nothing on it except a name plate and a telephone; that appellant walked by Tomlin's desk with his back to the desk and with his hands behind his back; that immediately thereafter folded bills in the amount of $80.00 were

observed lying on the corner of Tomlin's desk; and that these bills were identified by their serial numbers as part of the federal funds which Rhodes was carrying when arrested by appellant.

By its express terms, Section 129 requires proof that the accused (a) was employed as a cashier, servant, agent, clerk, or officer by a person or body corporate; (b) that in such capacity he received personal property "for or in the name or on account of his master or employer"; and (c) that he thereafter fraudulently embezzled such property. *Gordon v. State,* 5 Md. App. 291, 303.

We think it clear that appellant, as a Baltimore City police officer, was within the meaning of Section 129 a servant, agent, or officer of the Police Commissioner of Baltimore City. By Chapter 203 of the Acts of 1966 (codified as Sections 16-1, *et seq.* of the Code of Public Local Laws of Baltimore City, 1969 Edition) the Police Department of Baltimore City is constituted an agency of the State of Maryland, the Police Commissioner being designated as the "chief police and executive officer of the Department" and, as such, "vested with all the powers, rights and privileges attending the responsibility of management," specifically including the power to appoint all members of the Department in the manner prescribed by law. Under these circumstances, we find no merit in appellant's contention that the relationship required under Section 129 between himself and the Police Commissioner was not shown. *See Couture v. State,* 7 Md. App. 269.

We also think it clear that appellant took Rhodes's money in the course of his police duties and therefore necessarily received it "for or in the name or on account of his master or employer," *viz.,* the Police Commissioner. Whether the money taken from Rhodes was to be used as evidence, or only held for safekeeping, the ultimate responsibility for it resided in the Police Commissioner in his capacity as the executive head of the Department. Of course, it is not essential under Section 129 that ownership of the embezzled funds be in the master or em-

ployer; proof of any legal interest or special property in the money will suffice. *Loker v. State,* 250 Md. 677; *Gordon v. State, supra.* That the Police Commissioner had such an interest is, we believe, entirely plain.

We think there was evidence in the case, as heretofore set forth, which if believed—as it obviously was—showed that after appellant received the money from Rhodes, he fraudulently embezzled $80.00 thereof.

We thus conclude, contrary to appellant's contention, that the trial judge did not err in denying his motions for judgments of acquittal of embezzlement and misconduct in office (malfeasance or misfeasance) by reason of such embezzlement.

Appellant contends that as the charge of misconduct in office (malfeasance or misfeasance) was based on the alleged embezzlement, that offense, a misdemeanor, merged into the felony of embezzlement. We do not agree. It is a general rule of the common law that wilful neglect or failure of a public officer to perform any ministerial duty which by law he is required to perform is an indictable offense. *See State v. Wheatley,* 192 Md. 44, 47; Perkins on Criminal Law (2nd Edition) pages 485-490. Embezzlement is an entirely different offense and while factually appellant was found guilty of misconduct in office primarily because of his act of embezzlement, neither offense necessarily implicates the other, the facts necessary to prove either offense not being essential elements in establishing the other. *See Brown v. State,* 8 Md. App. 462.

Appellant next contends that the trial judge thrice erred in characterizing evidence so as to resolve questions of fact before the jury.

### (a)

He claims that the court erred in telling the jury that while the official police report stated that $1,532.00 was taken from Rhodes upon his arrest, the report was obviously in error as Rhodes testified that only $1,512.00 was taken from him. After appellant moved for a mis-

trial because of the court's comment, the court instructed the jury to disregard his remark and to draw its own conclusion whether the report was in error. The court denied the motion for mistrial and on these facts we see no reversible error.

### (b)

Appellant claims that the court erred in giving the jury an erroneous instruction as to a crucial fact in that, in summarizing the evidence for the jury, it stated that Rhodes had said he had seen appellant place his hand in his left pocket during the time the money was being counted. The court corrected its statement in a subsequent instruction to the jury by telling the jury that both the prosecutor and defense counsel agreed that Rhodes said only that appellant had placed his hand down his left leg. The court told the jury that the matter was for its recollection, and that any statement the court made was not binding on the jury. On these facts, we see no reversible error.

### (c)

Appellant claims that the court erred in its instructions to the jury by characterizing the defense offered by him in a manner such as to disparage said defense in the eyes of the jury. It is extremely difficult to determine the merits of such a claim on the cold record before us. The trial judge must, of course, take great care to avoid making any statement which, by its content, or the manner of its expression, or by the way it is delivered, would tend to express disbelief in the theory of the defense, or in the testimony of defense witnesses. We have carefully reviewed the allegedly prejudicial remarks of the court but do not find them to constitute error of such impact as to deny appellant his right to a fair trial.

*Judgments affirmed; appellant*
*to pay costs.*