590 A.2d 562

**Malachi WILSON**

v.

**STATE of Maryland.**

**No. 1030, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 30, 1991.

Henry L. Belsky (Linda D. Moeller and Schlachman, Belsky & Weiner, P.A., on the brief), Baltimore, for appellant.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Jillyn K. Schulze, Asst. Atty. Gen. and Stuart O. Simms, State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

Argued before GARRITY, ALPERT and ROBERT M. BELL, JJ.

GARRITY, Judge.

On March 1, 1990, the Circuit Court for Baltimore City (Mitchell, J.), convicted Malachi Wilson, a Baltimore City Police Officer, of common law assault and carrying a deadly weapon openly with intent to injure. Appellant received a thirty day sentence which was suspended and eighteen months probation. From this conviction, Wilson appeals and presents the following issues for our review:

1. Whether the trial court abused its discretion by admitting testimony regarding the conduct of other police officers at the scene;

2. Whether the trial court applied the appropriate standard to analyze the quantum of force needed to effectuate the arrest;
3. Whether the state must produce expert testimony on the issue of what constitutes reasonable force.

## Statement of the Facts

On October 12, 1989, at approximately 1:00 a.m., Officer Malachi Wilson, then an off-duty member of the Baltimore City Police Department, observed that his sister's car, which he had been operating earlier in the evening, had been stolen. A two year veteran of the police force, Officer Wilson immediately reported the theft, and Officer Brian A. Weber responded to the call. Officer Wilson accompanied him in the patrol car to conduct a search for the stolen automobile.

After patrolling for a short period of time, the officers observed the stolen vehicle and undertook a high speed chase which lasted for several blocks through a residential area. When the vehicle finally came to rest in the parking lot of an apartment project, its occupants swiftly alighted and scattered in different directions. Officer Wilson testified that he grabbed a flashlight from the front seat and ran after the driver while yelling, "Police! Stop!" The fleeing suspect, Charles Johnson, turned to look, fell, scrambled back to his feet, and continued to run. With a distance of 15 feet between them, Wilson chased Johnson around a corner and then into and up an alley. As he drew closer, Wilson reached into his pocket to pull out his badge. While Wilson was turning and calling "police," Johnson stopped. According to Wilson, when he turned back around, he was met with the fist of Charles Johnson, who then rushed the officer. The two men struggled, falling into a fence which lined the alley. After about two minutes, Wilson struck Johnson three or four times on the head with a flashlight, "as hard as I could." Johnson then collapsed, and Wilson held him down. Additional officers arrived and placed Johnson in handcuffs.

Johnson testified, however, that he was chased into an alley where he became trapped. "So, I stopped, and placed my hands in the air, and turned around and put them on the fence. When I put my hands on the fence, I was hit on the back of my head by a flashlight." Johnson stated that after the officer hit him on the head, the officer asked Johnson whether he knew whose car it was that had been stolen. The officer then

> struck me several more times, and then he repeated this was my car. Then he kept on hitting me. He said, "Don't ever take nothing of mine again." He just kind of beat me, and he kicked me. He kicked me a couple of times.[1]

Henry Watson, whose home abutted the alley where this incident occurred, testified over objection that he heard a ruckus and ran outside. When he got to the fence, he

> seen this guy beating this kid up. Like I said, my wife, she was running behind me. As I was following the gentlemen up the alley, I noticed he was pulling the kid by the hood of a sweater. Was pulling him by the hood. He had a stick, and I believe he was hitting him with a stick. As it turned out, it turned out to be a flashlight.

Watson testified that the person, whom he identified as Officer Wilson, dragged Johnson to the other end of the alley, approximately thirty-five or forty feet. When Wilson and his prisoner reached the top of the alley, Watson saw additional police arrive at the scene. He stated:

> they were doing a lot of fussing and cussing. I was real upset. . . .
>
> Then the other officer, they came, and I was looking. There was so much ruckus, and at that time two or three

---

1. The hospital diagnosed Johnson as suffering from a fractured nose, multiple lacerations and contusions about the face and the posterior area of the head. At the time of this incident, Johnson was seventeen years of age, 6 feet, 5 inches tall, and weighed 135 pounds. Officer Wilson weighed about 215 pounds.

came up to me and said, "Get the fuck on down the street before we fuck you up."

Carol Watson, Henry Watson's wife, observed Officer Wilson dragging Johnson by the hood of his sweatshirt. She also saw three or four police officers beating the youth as he lay on the ground.[2] They were also hitting him with some kind of object, according to Mrs. Watson.

Officer Rosie Banks testified that when she arrived on the scene, Johnson was lying on the ground and Wilson was standing over him. She testified that a man and woman in the alley were complaining about the way the young man had been beaten. Officer Banks then heard Wilson say to Johnson, "We're going to kill you. You think you're hurt now, we're going to make you talk 'Western District style.'" Before Wilson made this statement, Banks observed two other police officers kick Johnson in the stomach.

## I.

■ Appellant complains that the court abused its discretion when it permitted the Watsons and Officer Banks to testify about actions of police officers purportedly occurring subsequent to the appellant's conduct. Specifically, appellant assigns error to the court's admission of another officer's unequivocal warning to the Watsons to leave the scene and evidence of other police officers kicking the victim. Appellant contends that he was involved with the victim for a limited time period. Appellant testified that once he had subdued Johnson, he moved away from him. The evidence, however, does not bear out this position.

To be admissible, evidence must be relevant. *Turner v. State,* 301 Md. 180, 482 A.2d 869 (1984). In *State v. Joynes,*

---

2. The record before us does not identify the officers who continued beating Johnson, with the exception of an Officer Steven Sturm who was recognized by Officer Rosie Banks to be one of two kicking the victim.

314 Md. 113, 549 A.2d 380 (1988), the Court of Appeals expounded:

> There are two important components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. The second aspect of relevance is probative value, which is the tendency of evidence to establish the proposition that it is offered to prove.... Although the relevancy assessment is not susceptible to precise definition, it has been suggested that "the answer must lie in the judge's own experience, his general knowledge, and his understanding of human conduct and motivation." ... Evidence which is thus not probative of the proposition at which it is directed is deemed "irrelevant." ... The trial judge is usually in the best position to evaluate the probative value of the proffered evidence. Where evidence is utterly lacking in probative value, it may be condemned as "remote" or "speculative."

*Joynes*, 314 Md. at 119–20, 549 A.2d 380 (citations omitted).

While there was testimony that the appellant moved fifteen to twenty feet away from Johnson, Officer Banks testified that the appellant rejoined the officers gathered around Johnson. In fact, Officer Banks testified that the appellant was present when two Western District Police Officers kicked Johnson in the stomach and appellant thereafter threatened to kill him.

■ Contrary to appellant's contention, when, as in this case, the existence of a continuing course of activity is involved, evidence thereof is admissible even though it entails showing the conduct of third persons. *Wharton's Criminal Evidence*, § 103 (C. Torcia 14th ed. 1985). *See also Perrera v. State*, 184 Md. 51, 40 A.2d 53 (1944) (evidence of acts to which accused is not a party are not admissible unless so interwoven with other relevant evidence). As the incident involving the appellant and the group of other police officers was of a continuing nature,

we hold that the court properly considered the evidence in its totality.

## II.

Appellant's assertion that the trial court erroneously used a subjective criterion to determine whether he used excessive force lacks any factual basis.

At the conclusion of the State's case, appellant moved for judgment of acquittal. In denying the motion, the court enunciated the appropriate standard:

> We don't dispute the principle enunciated in *Wharton's* regarding the authority of the police to use adequate force to subdue a suspect, but he must use that force reasonably necessary to discharge his official duties. In so doing, he is not liable civilly or criminally for the assault or battery that may result, including, if necessary, the use of deadly force. And he may even use force to repel the objections of that person if he reasonably believes that he is in imminent danger of either losing his own life or suffering great bodily harm. The force he may use, of course, must be adequate for the circumstances. But in assessing that, we must judge the reasonableness from the perspective of a reasonable police officer and not from the perspective of a reasonable citizen not sworn to enforce the law.

At the conclusion of the evidence, and after argument of counsel, the court preceded its verdict with the following discussion:

> Firstly, the standard of review on the charge of assault is one of reasonableness. A police officer is adjudged by a different standard than that we accord to an ordinary citizen. His duties in society are markedly different. Actions that are reasonably necessary to effect his responsibilities go unpunished and the court is adequately equipped to render that judgment ... this court is compe-

tent to determine the reasonableness of the conduct committed here.

The court found the facts to be as follows:

Taking Johnson alone, Officer Wilson struck him about the head without provocation or justification. It was done as a form of summary punishment without benefit of trial. How do we know this? Number one, the Watsons tell us so ... the Watsons are credible. They have been corroborated through their testimony. This court believes them when they say Officer Wilson was dragging Johnson from the alley, beating him all the way.

His injuries again bear this out. Was his conduct reasonably necessary to use in the discharge of Officer Wilson's duties? We answer with a resounding no. His actions in the alley and then again at the entrance of the alley went far beyond the bounds of conduct that this community, whether defined as police or civilian, would accord as within the realm reasonable. Officer Wilson was excessive in his behavior and for that must suffer the consequences.

The record does not bear out appellant's claim that the court viewed Officer Wilson's conduct in a subjective context.

In *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455 (1989), a civil rights suit brought under 42 U.S.C. § 1983, the plaintiff sought recovery of damages for injuries allegedly sustained when stopped by law enforcement officers. In determining whether the force used to accomplish a particular seizure was reasonable under the Fourth Amendment, the Court adopted an objective reasonableness standard, as did the trial judge in the case at bar.

We hold that a police officer, from the perspective of a reasonable police officer, may use only that amount of force reasonably necessary under the circumstances to discharge his duties. *See Davis v. Muse*, 51 Md.App. 93, 441 A.2d 1089 (1982) (construing jury instruction on reasonableness

of force used by police officer but requiring additional instruction on malice in context of sovereign immunity defense). It is evident to us that the trial court objectively adjudged the conduct of Officer Wilson, as a police officer, by that standard.

## III.

Appellant also contends that the State should be required to present an expert witness to advise the court on the amount of force which a police officer is entitled to use in effecting an arrest. This position is contrary to the general rule, however, that the jury is the arbiter of the reasonableness of force used by a police officer to effect an arrest. *Richardson v. Snow*, 340 F.Supp. 1261 (D.Md. 1972); *People v. Burres*, 101 Cal.App.3d 341, 161 Cal.Rptr. 593 (1980); *People v. Curtis*, 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33 (1969).

The following standard, which we believe to be correct, is:

What amounts to reasonable force on the part of an officer making an arrest usually depends on the facts in the particular case, and hence the question is for the jury. The reasonableness of the force used must be judged in the light of the circumstances as they appeared to the officer at the time he acted, and the measure is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances.

5 Am.Jur.2d *Arrest* § 81 (footnotes omitted.)

Accordingly, we reject appellant's argument.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.