*Marlon Koushall v. State of Maryland*, No. 2031, September Term, 2019. Opinion by Fader, C.J.

**MUNICIPAL CORPORATIONS — POLICE — CRIMINAL RESPONSIBILITY**

An officer is not criminally or civilly responsible for assault or battery if the officer uses only the amount of force reasonably necessary to discharge the officer's official duties.

**PUBLIC EMPLOYMENT — CRIMINAL RESPONSILBITY — OFFENSES**

Malfeasance is not a modality of misconduct in office, but rather a type of behavior that can be used to prove the "corrupt behavior" element of misconduct in office.

**CRIMINAL LAW — NATURE AND ELEMENTS OF CRIME — MERGER OF OFFENSES**

Misconduct in office and second-degree assault do not merge under the required evidence test.

Circuit Court for Baltimore City
Case No. 119038015

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2031

September Term, 2019

_____

MARLON KOUSHALL

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Arthur,
Gould,

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: February 26, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Marlon Koushall, the appellant, challenges the sufficiency of the evidence supporting his convictions for second-degree assault and misconduct in office by a judge sitting in the Circuit Court for Baltimore City. The charges stemmed from an incident in which Mr. Koushall, who was working as a Baltimore City police officer, struck Henrietta Middleton in the head while responding to a request for backup. Mr. Koushall contends that no reasonable factfinder could have found that his conduct was not justified. Mr. Koushall also argues that his convictions for second-degree assault and misconduct in office should have been merged for the purpose of sentencing. We discern no error by the trial court. Accordingly, we will affirm the judgments.

## BACKGROUND[1]

This case arises out of an altercation that occurred in August 2018 between Mr. Koushall, at the time an on-duty sergeant for the Baltimore City Police Department (the "Department"), and Henrietta Middleton, an off-duty sergeant with the Department, outside of Norma Jean's, a strip club in Baltimore. Before Mr. Koushall's arrival on the scene, Sgt. Middleton was with a group of women who had emerged from Norma Jean's, where they had been attending a bachelorette party for another off-duty officer, Detective Wanda Johnson. All of the women were in plain clothes and most had been consuming alcohol. When the group exited Norma Jean's, one of its members began to argue with a woman who was not part of their group, Jane Stancil. The argument had gotten physical

---

[1] This recitation of facts reflects that, when reviewing a conviction for evidentiary sufficiency, we view the evidence "in the light most favorable to the prosecution." *State v. Morrison*, 470 Md. 86, 105 (2020).

when Officer Anthony Pujols, a beat officer on the scene, attempted to separate Ms. Stancil from the others, and called for back-up. Meanwhile, Sgt. Middleton attempted to shepherd the other members of the bachelorette party away from Norma Jean's.

Mr. Koushall, who was on-duty nearby, responded to the call for backup. When he arrived, he approached Officer Pujols. At the same time, Sgt. Middleton began to walk back toward Ms. Stancil, who was still being restrained by Officer Pujols on the sidewalk outside Norma Jean's. Sgt. Middleton, who believed that Ms. Stancil had spat at her, spread her arms out to her sides as she approached and asked, "what are you spitting for?" As Mr. Koushall approached, he shouted at Sgt. Middleton to "back up," and then, before she could react to that command, he pushed her back and struck her on the left side of her face. Sgt. Middleton testified that she had not had any physical contact with Mr. Koushall before the strike. Nicole Blake, a private security guard who witnessed the incident, testified that Mr. Koushall "pulled back his fist all the way and then hit [Sgt. Middleton]," while Sgt. Middleton was talking and her hands were down. As shown in security camera footage, less than five seconds passed between Mr. Koushall's approach and his strike.

After the strike, Sgt. Middleton attempted to flee, but Mr. Koushall grabbed her by the hair and took her to the ground. At that point, both Ms. Blake and Officer Pujols intervened to protect Sgt. Middleton. Ms. Blake ran in between Mr. Koushall and Sgt. Middleton, shielded Sgt. Middleton, and "pushed [Mr. Koushall] out of the way." Officer Pujols, thinking that Mr. Koushall was going to punch Sgt. Middleton again, "got on [Mr. Koushall's] back" to intervene. Mr. Koushall then told Sgt. Middleton that she was under arrest.

The Department cited Sgt. Middleton for disorderly conduct, failure to obey a lawful order, assault on a police officer, and resisting arrest. However, when the State's Attorney's Office received the case and reviewed the evidence, it decided to instead pursue charges against Mr. Koushall. The State subsequently indicted Mr. Koushall for second-degree assault and misconduct in office.

Mr. Koushall elected a bench trial, which took place in September and October 2019. The State called three members of the bridal party: Sgt. Middleton, Det. Dominique Wiggins, and Det. Johnson. Their largely consistent testimony was that Mr. Koushall approached Sgt. Middleton, might or might not have said something to her,[2] and then struck her in the face before she could respond. The State also called Ms. Blake, the private security guard, who described the incident and testified that she intervened because she feared for Sgt. Middleton's safety. Officer Pujols testified as to his recollection of the incident and stated that he tried to "pull [Mr. Koushall] away . . . with a bear hug" because he was worried that the interaction was going to get out of hand.

Mr. Koushall offered the testimony of Dr. Charles J. Key, an expert in use of force and police training. Dr. Key testified that when an individual is displaying "active aggression," an officer is authorized under Department guidelines to use hand and foot strikes to restrain the individual. He explained that active aggression includes "an imminent threat of an attack . . . and/or an actual attack where the person attempts to strike

---

[2] Sgt. Middleton recalled being told to "back up." Det. Johnson did not hear Mr. Koushall say anything, and Det. Wiggins did not recall whether Mr. Koushall had said anything before striking Sgt. Middleton.

or actually strikes," such as "lunging towards the officer, taking a fighting stance, [or] striking the officer with hands, fists[.]" Dr. Key testified that, in his opinion, Sgt. Middleton was displaying active aggression toward Mr. Koushall and, therefore, Mr. Koushall was justified in striking Sgt. Middleton as he did and would have been justified in using even greater force.

Mr. Koushall testified on his own behalf.[3] He contended that Sgt. Middleton had aggressively approached him in a fighting stance and that his response had been appropriate. He claimed that he gave Sgt. Middleton a verbal warning to back up and struck her only after she failed to comply. Mr. Koushall also testified that Department guidelines called for de-escalation techniques when possible and appropriate before resorting to the need for force.

The trial court found Mr. Koushall guilty of both second-degree assault and misconduct in office. The court expressed doubts regarding the credibility of at least some of the testimony of all of the fact witnesses and indicated that it relied in significant part on its review of the security camera footage. The court found that Mr. Koushall's "perception of [Sgt. Middleton's] active [aggression]" was not reasonable and that he had not reacted reasonably to her behavior or attempted to get the situation under control.

---

[3] The defense additionally called three other officers. Officer Justin Vitek arrived on the scene right as Mr. Koushall struck Sgt. Middleton and testified primarily about the aftermath of the altercation. Officer Yolanda Nelson testified that she did not witness the altercation in person, but she advised Mr. Koushall to press charges against Sgt. Middleton after viewing security camera footage. Finally, Lieutenant Jason Yerg testified regarding citations that were issued to Sgt. Middleton for her role in the fracas. Lt. Yerg explained that those citations were never formally filed with the court system.

Instead, Mr. Koushall had "overreacted [to] everything," the "force he used was totally disproportionate to the need," and, the court found, he had the "intent to do more than [to] get [Sgt.] Middleton under control." The court concluded that Mr. Koushall's "actions were not reasonable given the totality of the circumstances. They went beyond what a reasonable officer would have done with his training and experience under the same circumstances."

The court sentenced Mr. Koushall to three years' imprisonment, all suspended except time served for the assault charge, and six years' imprisonment, all suspended except time served for the misconduct charge. Mr. Koushall timely appealed.

## DISCUSSION

Mr. Koushall contends that there was insufficient evidence to sustain his convictions and that the trial court erred by not merging his convictions for sentencing purposes. We conclude that the evidence was sufficient to sustain both convictions and that merger was not required and, accordingly, will affirm.

In analyzing whether there was sufficient evidence to support the verdict, we ask whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Morrison*, 470 Md. 86, 105 (2020) (quoting *Smith v. State*, 415 Md. 174, 184 (2010)). "We give due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." *Spencer v. State*, 450 Md. 530, 549 (2016) *(*quoting *Harrison v. State*, 382 Md. 477, 487-88 (2004)) (internal quotation marks omitted). "[O]ur concern

is only whether the verdict was supported by sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *State v. Manion*, 442 Md. 419, 431 (2015) (quoting *Taylor v. State*, 346 Md. 452, 457 (1997)). Accordingly, we will overturn the convictions only if, upon review of the evidence, we determine that the judge's decision was clearly erroneous. *Manion*, 442 Md. at 431.

We review "without deference the question of whether a sentence is legal." *State v. Wilson*, 471 Md. 136, 178 (2020).

## I. THE EVIDENCE WAS SUFFICIENT TO CONVICT MR. KOUSHALL OF BOTH SECOND-DEGREE ASSAULT AND MISCONDUCT IN OFFICE.

Mr. Koushall contends that the evidence produced at trial was insufficient to sustain his conviction for second-degree assault because the State did not present any evidence that he acted without justification. He also contends that because the misconduct in office charge was predicated on the defective second-degree assault charge, that conviction too must be overturned. We hold that the evidence was sufficient to sustain both convictions.

### A. Second-Degree Assault

There are three types of second-degree assault in Maryland: intent to frighten, attempted battery, and battery. *State v. Frazier*, 469 Md. 627, 644 (2020). Mr. Koushall was convicted of the battery type of second-degree assault, which required the State to prove that "(1) [he] caused offensive physical contact with, or harm to, [Sgt. Middleton]; (2) the contact was the result of an intentional or reckless act of [Mr. Koushall] and was not accidental; and (3) the contact was not consented to by [Sgt. Middleton] or was not

6

legally justified." *Nicolas v. State*, 426 Md. 385, 403-04 (2012). Mr. Koushall does not dispute the first two elements: He struck Sgt. Middleton and he did so intentionally. The only question is whether the evidence was sufficient for the court to find beyond a reasonable doubt that he was not justified in doing so. The resolution of that question requires consideration of the law enforcement justification defense.

The law enforcement justification defense provides that if an officer uses only "that force reasonably necessary to discharge his official duties . . ., [the officer] is not liable civilly or criminally for the assault or battery that may result[.]"[4] *Wilson v. State*, 87 Md. App. 512, 519 (1991); *see also Riley v. State*, 227 Md. App. 249, 258 (2016) (stating that a police officer can "raise the affirmative defense of law-enforcement justification" as a defense to criminal prosecution). In considering an officer's conduct, "the standard of review . . . is one of reasonableness. A police officer is adjudged by a different standard than that we accord to an ordinary citizen. [The officer's] duties in society are markedly different. Actions that are reasonably necessary to effect [the officer's] responsibilities go unpunished[.]" *Wilson*, 87 Md. App. at 519. That is because a law enforcement officer "is authorized and, indeed, frequently obligated to threaten deadly force on a regular basis.

---

[4] Mr. Koushall contends that law enforcement justification is an element of assault, not an affirmative defense. He is technically incorrect. Law enforcement justification is an affirmative defense that must be raised by the defendant. *Riley v. State*, 227 Md. App. 249, 258 (2016). However, as in any criminal case, the burden of persuasion to prove the elements of a charge is on the State. *Evans v. State*, 28 Md. App. 640, 654 (1975), *aff'd*, 278 Md. 197 (1976). Mr. Koushall was indisputably working as a law enforcement officer at the time of the altercation. Thus, once he invoked the defense, the State bore the burden to prove that Mr. Koushall's actions were not justified based on the application of that defense. *Cf. In re Lavar D.*, 189 Md. App. 526, 578 (2009) (explaining burden of production and persuasion in context of self-defense affirmative defense).

The standard of conduct demanded of a police officer on duty, therefore, is the standard of a reasonable police officer similarly situated." *State v. Pagotto*, 361 Md. 528, 549 (2000) (quoting *State v. Albrecht*, 336 Md. 475, 501 (1994)).

Mr. Koushall contends that the evidence was insufficient to convict him of assault because the State failed to produce any evidence that his actions were not justified. Relying almost exclusively on his own testimony and that of his expert witness, Dr. Key, Mr. Koushall argues that no reasonable factfinder could have concluded that his actions were not reasonable. The State responds that it presented a "profusion" of evidence that Mr. Koushall's conduct was objectively unreasonable, including: (1) Sgt. Middleton's testimony that she did not make contact with Mr. Koushall before he struck her; (2) security camera footage of the incident and testimony of other witnesses that support Sgt. Middleton's account; (3) testimony and video evidence regarding Officer Pujols's and Ms. Blake's responses to Mr. Koushall's actions; and (4) departmental guidelines for the use of force that Mr. Koushall violated.

The court made a factual finding that a reasonable officer in Mr. Koushall's position would not have reacted in the manner that he did. Were the only evidence in the record the testimony of Mr. Koushall and Dr. Key, we might be constrained to agree with Mr. Koushall that the court erred. But that is not the case. In effect, Mr. Koushall asks us to credit the testimony of some witnesses above others and to weigh the evidence differently than the trial court did. That is not our role. *See Morrison*, 470 Md. at 105 ("The purpose of our review is not to engage in a 'review of the record that would amount to, in essence, a retrial of the case.'") (quoting *Titus v. State*, 423 Md. 548, 557 (2011))).

8

Rather, we must give "due regard" to the trial court's findings of facts, resolution of conflicting evidence, and evaluation of witness credibility. *Spencer*, 450 Md. at 548. If, taking the facts in the light most favorable to the State, any reasonable factfinder could have come to the same conclusion that the court did, our inquiry is at an end. *Morrison*, 470 Md. at 105.

Taking the facts presented at trial in the light most favorable to the State, a reasonable factfinder could determine that Mr. Koushall's actions were not objectively reasonable from the perspective of a law enforcement officer in his position, based on the totality of the circumstances. Sgt. Middleton testified that she was not exhibiting aggressive behavior, that Mr. Koushall made no effort to de-escalate the situation, and that he did not give her an opportunity to respond to his verbal direction before striking her. Other witnesses, including members of the bachelorette party and Ms. Blake, largely corroborated Sgt. Middleton's account. Additionally, both Officer Pujols and Ms. Blake testified that Mr. Koushall's actions were concerning enough that they immediately moved to stop Mr. Koushall after his strike, even though Mr. Koushall was an on-duty police officer and Officer Pujols's superior officer. Ms. Blake also confirmed both the force of Mr. Koushall's strike and that Sgt. Middleton was not acting aggressively and had her hands down at the time. The testimony of these witnesses was largely corroborated by the security camera footage. All of that evidence supported the trial court's conclusion that Mr. Koushall's actions were objectively unreasonable under the deferential standard applied to the actions of law enforcement officers.

9

The testimony of these witnesses also suggested that Mr. Koushall failed to adhere to Department guidelines, which provide that officers "shall only use the force objectively reasonable and necessary and proportional to effectively and safety resolve an incident"; that officers shall, when possible, "slow down the situation and reassess how they can achieve the most peaceful outcome"; and that officers shall use "de-escalation techniques when possible and appropriate before resorting to force[.]" And although Dr. Key and Mr. Koushall testified that Mr. Koushall's actions were justified because Sgt. Middleton displayed "active aggression," the court was under no obligation to credit that testimony or credit it over conflicting testimony presented by the State. In sum, a reasonable factfinder who credited the State's evidence could conclude beyond a reasonable doubt that Mr. Koushall's actions were not objectively reasonable from the perspective of a reasonable officer in his position, and so were not justified.

Mr. Koushall also contends that the evidence was insufficient to show an absence of justification because the State did not present expert witness testimony that his use of force was not objectively reasonable in light of the totality of the circumstances. This Court has previously rejected the argument that the State is required to present expert testimony on the reasonableness of an officer's use of force. *See Wilson*, 87 Md. App at 521. In *Wilson*, we held that the factfinder, not an expert witness, "is the arbiter of the reasonableness of force used by a police officer to effect an arrest." *Id*. The reasonableness of force is compared to "that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances." *Id*. (quoting 5 Am. Jur. 2d Arrest § 81). Here, the trial court was well-

10

equipped to make the determination of objective reasonableness under the totality of the circumstances based on the evidence presented, even without an expert on the use of force for the State.

Finally, Mr. Koushall argues that his conviction was premised on impermissible hindsight and "Monday morning quarterbacking." He is incorrect. Throughout its ruling, the court correctly articulated the standard to apply to Mr. Koushall's conduct. The court opened its presentation of its findings of fact as follows:

> What would a reasonable officer do with the same training and experience in the same situation? Not necessarily what the best decision would be, but what a reasonable decision would be. And that's with regards to totality of all of the facts known or that appear to be . . . and that's even in hindsight.

And the court's ultimate conclusion was that Mr. Koushall's "actions were not reasonable given the totality of the circumstances. They went beyond what a reasonable officer would have done with his training and experience under the same circumstances." The court's statements and analysis thus belie Mr. Koushall's contention that the court judged his conduct based on 20-20 hindsight, using knowledge that he did not possess at the time, or based on an assessment of what the ideal course of action would have been. Instead, the court properly examined whether his conduct was objectively reasonable from the perspective of a reasonable officer in light of the totality of circumstances he faced. *See Wilson*, 87 Md. App. at 521.

Accordingly, we will affirm the trial court's conviction of Mr. Koushall for second-degree assault.

## B. Misconduct in Office

Misconduct in office requires the State to prove "'[1] corrupt behavior [2] by a public officer [3] in the exercise of the duties of his [or her] office or while acting under the color of' his or her office." *Sewell v. State*, 239 Md. App 571, 601 (2018) (quoting *Leopold v. State*, 216 Md. App. 586, 604 (2014)). There are three types of corrupt behavior that can support a conviction for misconduct in office: misfeasance, malfeasance, and nonfeasance. "Nonfeasance is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; and malfeasance is the doing of an act which a person ought not to do at all." *Sewell*, 239 Md. App. at 602 (quoting *State v. Carter*, 200 Md. 255, 262 (1952)). Because the lines between these categories are "not always clear," *Sewell*, 239 Md. App. at 604, courts have held that "any discrepancy between [a defendant's] conviction based on malfeasance or misfeasance is moot if the State proved that [the defendant] acted willfully, fraudulently, or corruptly," *Pinheiro v. State*, 244 Md. App. 703, 723, *cert. denied*, 468 Md. 555 (2020).

Mr. Koushall's only argument concerning the sufficiency of the evidence to support his conviction for misconduct in office piggybacks on his challenge to his assault conviction. He contends that because the evidence was insufficient to convict him for assault, and because his "conviction for misconduct in office was premised upon his conviction for assault in the second degree, that conviction [for misconduct in office], too, should be vacated." The same conduct that supports the assault conviction, which we have already described, also satisfies the "corrupt behavior" element of misconduct in office. *See Riley*, 227 Md. App. at 264-65 n.7 (concluding that second-degree assault by an officer

12

was "corrupt" and so constituted an "oppressive and willful abuse of authority" sufficient to sustain a conviction for misconduct in office). Mr. Koushall does not challenge the sufficiency of the evidence regarding the other elements of the offense—that he was a public official exercising the duties of his office—which are undisputed. Accordingly, we will affirm Mr. Koushall's conviction for misconduct in office.

## II. THE CRIMES OF SECOND-DEGREE ASSAULT AND MISCONDUCT IN OFFICE DO NOT MERGE.

Mr. Koushall argues that the trial court erred by not merging his convictions for sentencing purposes. "[T]he doctrine of merger is examined under three distinct tests: (1) the required evidence test; (2) the rule of lenity; and (3) the principle of fundamental fairness." *Alexis v. State*, 437 Md. 457, 484 (2009). Mr. Koushall contends that his convictions should have merged under the required evidence test and the doctrine of fundamental fairness.[5] The State responds that the offenses of which Mr. Koushall was convicted have different elements, precluding merger under the required evidence test, and that Mr. Koushall's fundamental fairness argument was not preserved. We agree with the State.

### A. The Required Evidence Test

The Court of Appeals has recently confirmed the following description of the required evidence test:

---

[5] Mr. Koushall does not rely on the rule of lenity, which applies only to the interpretation of statutory offenses. *See Khalifa v. State,* 382 Md. 400, 434 (2004) (holding the rule of lenity only applies when "both offenses are statutory in nature or where one offense is statutory and the other is a derivative of common law"). Second-degree assault and misconduct in office are both common law crimes.

> Under the required evidence test—also known as the same evidence test, Blockburger test, or elements test—Crime A is a lesser-included offense of Crime B where all of the elements of Crime A are included in Crime B, so that only Crime B contains a distinct element. In other words, neither Crime A nor Crime B is a lesser-included offense of the other where each crime contains an element that the other does not.

*State v. Wilson*, 471 Md. 136, 178-79 (2020) (quoting *State v. Stewart*, 464 Md. 296, 318 (2019)). In spite of its name, the focus of the required evidence test is on the elements of the offenses, not the evidence introduced at trial to prove them in a given case.

We hold that Mr. Koushall's convictions for second-degree assault of the battery type and misconduct in office do not merge under the required evidence test. Misconduct in office requires proof of (1) corrupt behavior, (2) by a public official, (3) in the exercise of the official's office or under the color of law. *Sewell*, 239 Md. App. at 601. Assault of the battery type requires proof of an (1) offensive, (2) intentional, (3) unjustified touching. *Nicolas*, 426 Md. at 403-04. Misconduct in office requires an act by a public official, which assault does not; and assault requires an offensive touching, which misconduct in office does not. Each crime thus contains an element that the other does not; therefore, neither crime is a lesser-included offense of the other.

Mr. Koushall contends that when a conviction of misconduct in office is based on an act of malfeasance—i.e., an unlawful act—the act of malfeasance then serves as the corrupt behavior element of misconduct in office and, therefore, becomes a lesser-included offense of misconduct in office. That argument misapprehends the nature of the corrupt behavior element of misconduct in office. Malfeasance is not a modality of misconduct in office nor is it a separate offense. Rather, malfeasance, like misfeasance or nonfeasance,

14

is a "type[] of behavior," *Pinheiro*, 244 Md. App. at 721, which can be used to prove the "corrupt behavior" element of misconduct in office, *Sewell*, 239 Md. App. at 601; *see also Pinheiro*, 244 Md. App. at 722-23 n.8 (explaining that the primary relevance of the distinction between misfeasance and malfeasance lies in whether the State must present direct evidence of corrupt intent or if that intent may be inferred); *Leopold*, 216 Md. App. at 607 n.9 (declining to address the appellant's contention that he was not properly informed whether the allegations against him were premised on misfeasance or malfeasance because misconduct in office "encompasses both"). Although the State proved the corrupt behavior element of misconduct in office in this case through proof that Mr. Koushall committed an assault, that does not render assault an element of misconduct in office. Indeed, as we recently held, "the State is only required to prove 'that the public officer acted willfully, fraudulently, or corruptly' to sustain a conviction for misconduct in office, regardless of whether the official misconduct charge is based on an act of misfeasance or malfeasance." *Pinheiro*, 244 Md. App. at 722 (quoting *Sewell*, 239 Md. App. at 602). Stated succinctly, the behavior on which the State relied to prove its case does not alter the elements of the crime.

In *Tabbs v. State*, 10 Md. App. 177 (1970), this Court rejected essentially the same argument that Mr. Koushall makes here. There, we held that a police officer's conviction for misconduct in office predicated on an act of embezzlement did not merge with his conviction for embezzlement. *Id.* at 182. The officer argued that because "the charge of misconduct in office . . . was based on the alleged embezzlement, that offense, a misdemeanor, merged into the felony of embezzlement." *Id*. This Court, although

15

recognizing that the officer "was found guilty of misconduct in office primarily because of his act of embezzlement," concluded that the two offenses did not merge. Instead, we held that "neither offense necessarily implicates the other, the facts necessary to prove either offense not being essential elements in establishing the other." *Id*.

This case is not materially different from *Tabbs*. As in *Tabbs*, the misconduct in office charge stems from a criminal act; here, second-degree assault. But although second-degree assault can be used to prove an element of misconduct in office, just as embezzlement can, "neither offense necessarily implicates the other[.]" *Id*. Indeed, the trial court could have found Mr. Koushall guilty of misconduct in office based on his conduct toward Sgt. Middleton without finding him guilty of assault. For example, the court could have found that his strike was *objectively* reasonable and so justified—thus failing to satisfy the third element of assault, *see Nicolas*, 426 Md. at 404—but nonetheless wrongful—thus still satisfying the first element of misconduct in office, *see Francis v. State*, 208 Md. App. 1, 22-23 (2014) (stating that a defendant charged with misconduct in office could be convicted through proof of either unlawful or lawful-but-wrongful acts); *see also Duncan v. State*, 282 Md. 385, 387 (1978) (explaining that an officer can commit misconduct in office by committing an act that was lawful but wrongful).

Although the evidence used to prove the two charges in this case was the same, the elements of the offenses differed. *See Moore v. State*, 198 Md. App. 655, 689-702 (2011) (holding that although a conviction of theft by deception was based on the same evidence as a conviction for issuing counterfeit currency, convictions for theft by deception and issuing counterfeit currency did not merge because "issuing counterfeit currency with

16

knowledge of its counterfeit nature is not an element of the offense of theft by deception. It is simply evidence used to prove the element of deception."). We therefore conclude that misconduct in office and second-degree assault do not merge under the required evidence test.

### B.    Fundamental Fairness

Mr. Koushall also asks us to consider his merger argument based on fundamental fairness. However, as the State points out, Mr. Koushall did not raise a merger argument at sentencing. Typically, arguments not raised during sentencing determinations are not preserved on appeal and are considered waived. *Bryant v. State*, 436 Md. 653, 660 (2014); *see also* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"). We make an exception to that rule when a defendant raises an unpreserved contention that a sentence is illegal for purposes of Rule 4-345(a), because a motion to correct an illegal sentence under that Rule may be raised "at any time." *See Moosavi v. State*, 355 Md. 651, 662 (1999). A sentence that should have merged based on required evidence or the rule of lenity is considered to be an illegal sentence under Rule 4-345(a). *See Pair v. State*, 202 Md. App. 617, 624 (2011). However, an argument for merger based on fundamental fairness does not "enjoy[] the procedural dispensation of Rule 4-345(a)."[6]

---

[6] Mr. Koushall contends that this Court's decision in *Pair* was based on the fact-driven nature of the fundamental fairness inquiry. Although that is an additional factor counseling against entertaining an unpreserved merger argument based on fundamental fairness on appeal, the primary reason why this Court addressed the appellant's required evidence and rule of lenity arguments in *Pair*, but not his fundamental fairness argument,

17

*Id.* at 649.  Because Mr. Koushall did not preserve his argument for merger based on fundamental fairness, it is not subject to review on appeal.

We therefore hold the circuit court correctly imposed separate sentences for second-degree assault and misconduct in office.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

was because a sentence that should have merged only based on fundamental fairness is not "an inherently 'illegal sentence' within the tightly limited contemplation of the rule."  *See Pair*, 202 Md. App. at 649.